**Cassie Cordell TRUEBLOOD, et al., Plaintiffs,**

**v.**

**WASHINGTON STATE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, et al., Defendants.**

**Case No. C14–1178 MJP.**

United States District Court, W.D. Washington, at Seattle.

Signed Dec. 22, 2014.

**1312**

Anita Khandelwal, Public Defender Association, Christopher Robert Carney, Kenan Lee Isitt, Sean P. Gillespie, Carney Gillespie Isitt PLLP, David R. Carlson, Emily Cooper, Anna Catherine Guy, Disability Rights Washington, La Rond Baker, Margaret Chen, American Civil Liberties Union of WA, Sarah A. Dunne, ACLU of Washington, Seattle, WA, for Plaintiffs.

Amber Lea Leaders, John K. McIlhenny, Nicholas A. Williamson, Sarah Jane Coats, Washington State Attorney General, Olympia, WA, for Defendants.

## ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

MARSHA J. PECHMAN, Chief Judge.

THIS MATTER comes before the Court on Plaintiffs' motion for summary judgment on the question of whether current in-jail waiting times for court-ordered competency evaluation and restoration services violate the Due Process Clause of the Fourteenth Amendment. (Dkt. No. 87.) Having considered the Parties' briefing and all related papers, the Court finds the current in-jail wait time experienced by Plaintiffs and class members to be far beyond any constitutional boundary and therefore GRANTS the motion.

### Summary

In this case, Plaintiffs argue that Defendants, the Washington State Department of Social and Health Services and two state hospitals, Western State Hospital and Eastern State Hospital, are violating the constitutional rights of certain pretrial criminal defendants by failing to provide those individuals with timely services. State law requires that Defendants provide competency evaluation and competency restoration services to people who have been charged with a crime, but who state court judges believe may be mentally incompetent to stand trial.

Once a court orders that an individual be evaluated for competency or that an incompetent person receive treatment so as to restore competency, that individual waits in the local jail until Defendants are able to provide those services. The hospitals have been unable to provide services within the timeframe suggested by the legislature, seven days, because of an increase in the number of individuals requiring such services and because of a lack of resources, staff, and facilities. The average in-jail waiting times now range from two weeks at the low end to almost two months on the high end.

As the Court explains in greater detail below, Defendants' failure to provide these court-ordered services within a reasonable amount of time violates the rights guaranteed by the Due Process Clause of the

Fourteenth Amendment. The Due Process Clause protects the liberty interests of individuals to be free from incarceration absent a criminal conviction, and to receive restorative treatment when they are being incarcerated due to mental incompetence. Defendants' failure to provide timely services to these detainees has caused them to be incarcerated, sometimes for months, in conditions that erode their mental health, causing harm and making it even less likely that they will eventually be able to stand trial. Because this failure violates the due process rights of criminal defendants who are mentally ill or suspected to be mentally ill, the Court grants Plaintiffs' motion and declares that Defendants have violated their constitutional rights. At trial, the Court will hear facts to determine what amount of time detainees can be made to wait without violating their due process rights, and will fashion a remedy accordingly.

## Background

This summary judgment motion is part of a class action brought on behalf of people facing criminal charges who have been found to be, or are suspected to be, mentally incompetent to stand trial. Following a court order that they be evaluated for competency or provided with competency restoration services, these detainees wait in city or county jail until they can be accepted into one of two state hospitals charged by state law with performing competency services for criminal defendants. RCW 10.77 *et seq.* (2014). At this point, their criminal prosecutions are stayed until they regain competency; if they cannot regain competency, they must be found not guilty by reason of insanity. The hospitals, Western State Hospital ("WSH") and Eastern State Hospital ("ESH"), are chronically short on beds and staff, and thus the waiting time for transfer—not to exceed seven days under a target deadline set by the legislature—can now exceed sixty days. For the period of November 1, 2012 to April 30, 2013, individuals waited in jail on average twenty-nine days for evaluation and fifteen days for restoration at WSH, and fifty days for evaluation and seventeen days for restoration at ESH. (Dkt. No. 42–3 at 51.) The legislature's target of wait time of seven days or less was met less than fifteen percent of the time. (*Id.*)

Plaintiffs detail the alarming conditions faced by many mentally ill pretrial detainees while in jail awaiting transfer. (Dkt. No. 87 at 7–10.) Without access to medication and facing the extraordinary stresses of being incarcerated, some detainees resort to harming themselves or others. (Dkt. No. 47 at 3–5.) Some detainees withdraw within themselves, refusing to eat and urinating and defecating on themselves rather than interact with guards and other detainees. (Dkt. No. 52 at 3–5.) Some are forcibly medicated or restrained so as to allow for guards to feed and clean them, and suffer physical injuries from the process. (Dkt. No. 42 at 4–5.) Jails are often not equipped to deal with people with mental health issues, and overwhelmed guards resort to placing mentally ill detainees in solitary confinement, for their own safety or the safety of others. (Dkt. No. 50–1 at 10–14). Alone for 22 to 23 hours a day and without access to medication, some of these detainees lose touch with reality—damage to their mental health that can take years of intensive mental health services to reverse. (*Id.* at 15–17.)

Defendants—WSH, ESH, and the State Department of Social and Health Services—concede that "current wait times for many criminal defendants are excessive and indefensible." (Dkt. No. 95 at 3.) They argue, however, that other waiting periods are reasonable under the circumstances and thus comply with due process. Defendants detail the challenges they face,

including a lack of qualified and/or licensed forensic psychologists who can perform competency evaluations and restoration services, concern for the safety of other patients and hospital staff when potentially dangerous arrestees are too hastily transferred to civil units, and the lack of physically acceptable spaces which can be secured sufficiently to serve those facing criminal charges. (Dkt. No. 95 at 3–7.)

Plaintiffs argue that Defendants' lack of funds, staff, or facilities cannot justify infringement of the liberty interests of those incarcerated, and now seek summary judgment on the question of whether current wait times violate due process.

## Discussion

### I. Legal Standards

#### A. Summary Judgment

Summary judgment is proper where "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In assessing whether a party has met its burden, the underlying evidence must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). All material facts alleged by the non-moving party are assumed to be true, and all inferences must be drawn in that party's favor. *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1088 (9th Cir.2008).

#### B. Due Process Clause of the Fourteenth Amendment

" 'The Due Process Clause ... provides heightened protection against government interference with certain fundamental rights and liberty interests,' ... 'forbid[ding] the government to infringe certain "fundamental" liberty interests *at all*,

no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest.' " *Lopez–Valenzuela v. Arpaio*, 770 F.3d 772, 780 (9th Cir.2014) (en banc) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 719–20, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997) and *Reno v. Flores*, 507 U.S. 292, 302, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993)) (emphasis in original). The Supreme Court has long recognized that individuals have a fundamental liberty interest in being free from incarceration absent a criminal conviction, and that there are corresponding constitutional limits on pretrial detention. *See Lopez–Valenzuela*, 770 F.3d at 777–78, 780–81.

 "Incapacitated criminal defendants have liberty interests in freedom from incarceration and in restorative treatment." *Oregon Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1121 (9th Cir.2003). "Because incapacitated criminal defendants have not been convicted of any crime, they have an interest in freedom from incarceration. They also have a liberty interest in receiving restorative treatment." *Id.* "[A] person charged by a State with a criminal offense who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future. If it is determined that this is not the case, then the State must either institute the customary civil commitment proceeding that would be required to commit indefinitely any other citizen, or release the defendant. Furthermore, even if it is determined that the defendant probably soon will be able to stand trial, his continued commitment must be justified by progress toward that goal." *Jackson v. Indiana*, 406 U.S. 715, 738, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972).

■ "Whether the substantive due process rights of incapacitated criminal defendants have been violated must be determined by balancing their liberty interests in freedom from incarceration and in restorative treatment against the legitimate interests of the state." *Mink*, 322 F.3d at 1121.

## II. Plaintiffs' and Class Members' Liberty Interests

Plaintiffs and class members have suffered extended periods of incarceration in city and county jails awaiting court-ordered competency evaluation and restoration services, implicating their rights to be free from incarceration absent conviction and to timely restorative treatment when mental incompetence is the purpose of their incarceration.

■ "[T]he paradigmatic liberty interest under the due process clause is freedom from incarceration." *Oviatt ex rel. Waugh v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992). Furthermore, "a person committed solely on the basis of his mental incapacity has a constitutional right to receive such individual treatment as will give each of them a realistic opportunity to be cured or to improve his or her mental condition." *Ohlinger v. Watson*, 652 F.2d 775, 778 (9th Cir.1980) (internal quotation marks omitted). "Adequate and effective treatment is constitutionally required because, absent treatment, [they] could be held indefinitely as a result of their mental illness, while those convicted and sentenced" need only serve the maximum term for their criminal offense. *Id.*

While Defendants argue that a certain amount of in-jail wait time is both reasonable and constitutional, they agree that Plaintiffs and class members have due process rights to be free from prolonged incarceration absent conviction, and in restorative treatment when they are being incarcerated for the purpose of competen-

cy evaluation and restoration. (Dkt. No. 95 at 12, 20.)

## III. State Interests

"The safeguards that the Constitution accords to criminal defendants presuppose that government has a sovereign prerogative to put on trial those accused in good faith of violating valid laws. Constitutional power to bring an accused to trial is fundamental to a scheme of 'ordered liberty' and prerequisite to social justice and peace." *Illinois v. Allen*, 397 U.S. 337, 347, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970) (Brennan, J., concurring). In furtherance of that goal, the state has a legitimate interest in evaluating a potentially incompetent defendant's competency so as to determine whether he or she may stand trial, and in restoring the competency of those found incompetent so that they then may be brought to trial. The state has a corresponding interest in an efficient and organized competency evaluation and restoration system, the administration of which uses public resources in an appropriate manner. "Lack of funds, staff or facilities," however, "cannot justify the State's failure to provide [such persons] with [the] treatment necessary for rehabilitation." *Mink*, 322 F.3d at 1121 (quoting *Ohlinger*, 652 F.2d at 779).

Like the *Mink* court, this Court can discern no legitimate state interest in "keeping mentally incapacitated criminal defendants locked up in county jails for weeks or months." *Mink*, 322 F.3d at 1121. Defendants argue they have a "legitimate interest in *reasonable* delays before provision of competency services." (Dkt. No. 95 at 13) (emphasis in original). The Court disagrees. As discussed above, the state has a legitimate interest in an efficient, cost-effective competency services apparatus, and the functioning of that apparatus may require the passage of

a certain amount of time before services are provided. There is, however, no legitimate independent interest in delays within the system because delays undermine the state's "primary governmental interest" of bringing the accused to trial. (Dkt. No. 95 at 12.) Prolonged incarceration awaiting competency evaluation or restoration undermines that goal because "[w]hile they are detained in jail, incapacitated criminal defendants do not receive care giving them a realistic opportunity of becoming competent to stand trial." *Mink*, 322 F.3d at 1121. In other words, because jails are inherently punitive and not therapeutic institutions, the mental health of detainees further erodes with each additional day of wait time, especially when those detainees are held in solitary confinement. Because delays lengthen incarceration, worsening the mental health conditions of detainees, and because "continued commitment must be justified by progress toward [the] goal" of restoration of competency so that the detainee is able to stand trial, *Jackson v. Indiana*, 406 U.S. 715, 738, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972), there is no legitimate independent interest in delays.

Defendants also argue there is a legitimate interest in detaining individuals awaiting competency services who have pending criminal charges, particularly when the charges are serious in nature. (Dkt. No. 95 at 13.) While this may be true, Plaintiffs do not challenge the fact of their detention, but rather the length of their detention. (Dkt. No. 87.) The state's legitimate interest in detention is not an interest in prolonged or indefinite detention, and is not relevant to the question here.

## IV. Due Process Balancing

"Whether the substantive due process rights of incapacitated criminal defendants have been violated must be determined by balancing their liberty interests in freedom from incarceration and in restorative treatment against the legitimate interests of the state." *Mink*, 322 F.3d at 1121. The Court concludes that such a balance favors the mentally ill detainees, and that Defendants' failure to provide timely services violates the Due Process Clause of the Fourteenth Amendment.

■ Detainees incarcerated while waiting for court-ordered competency evaluation and restoration services face extraordinary hardships in city and county jails. Plaintiffs and class members are incarcerated for many weeks not because they have been convicted of a crime and not because they have been found to be dangerous or pose a flight risk; rather, Plaintiffs and class members are incarcerated because Defendants do not have sufficient bed space or available staff to provide the evaluations and restorations they are charged by state law with providing. While any incarceration can be harmful to people with serious mental illness, some detainees are held in solitary confinement—isolated for 22 to 23 hours per day—because city and county jails are ill equipped to handle the challenges posed by mentally ill detainees. For many, solitary confinement exacerbates mental illness and increases the chance of suicide. Plaintiff A.B., for instance, spent thirty-seven days in solitary confinement, where she declined to take medication or wash herself. (Dkt. No. 51 at 2.) Plaintiff D.D. told his attorney he had a plan to end his life because of his ongoing incarceration after spending weeks in solitary confinement. (Dkt. No. 54 at 2.) Plaintiff K.R. lost touch with reality after spending four months in jail without medication, much of it in solitary confinement after being assaulted by his cellmate. (Dkt. No. 88 at 2–3, 49 at 2–4.) Those not in solitary confinement also suffer deterioration of their mental health, in part because the rate of medication compliance in jails is low.

Plaintiff R.H., for example, told his attorney that he was experiencing visual hallucinations, blurred vision, and constant head pain, and could not remember his own name or whether anyone in his family had visited him in jail. (Dkt. No. 91 at 1–2.)

Jails are punitive environments by definition, and the conditions of confinement undermine the mental health of detainees as well as the state's interests in competency restoration and trial. While the state's interest in an organized, efficient, and cost-effective competency evaluation and restoration apparatus is legitimate, an effective and administrable system in no way requires waiting periods measured in weeks. Defendants themselves concede that their failure to provide timely competency evaluation and restoration services to some detainees has resulted in prolonged incarceration that is "excessive and indefensible." (Dkt. No. 95 at 1.) The Court concludes that the liberty interests of those incarcerated while awaiting court-ordered competency services outweigh countervailing state interests, and that the current waiting periods violate the substantive due process rights of those incarcerated.

**V. Defendant's Motion to Strike**

Defendants move to strike portions of Plaintiffs' Reply because it contains new arguments and new facts not contained in Plaintiffs' Motion for Summary Judgment. (Dkt. No. 103.) Specifically, Defendants move to strike Plaintiffs' argument that substantive due process is violated when waiting times exceed seven days as well as the facts contained in declarations attached to Plaintiffs' Reply. (*Id.* at 1.) Defendants contend that a proposed seven-day bright line presents a "separate and distinct legal question that calls for different analysis, different legal authority, and different material facts," and that Defendants would have responded accordingly

had the argument been presented (*Id.* at 3.)

While Plaintiffs' Reply does narrow their original argument, it does not present new issues or a materially different legal approach. Defendants have already substantively responded to the crux of Plaintiffs' argument: Defendants' Response makes clear that they oppose a bright line of any sort, argues at length the Court should not identify due process violations "based on arbitrary numbers," and contends that the Court should formulate a narrow rule and wait until trial to make more specific determinations. (Dkt. No. 95 at 7–11.) The Court agrees with Defendants, however, that the introduction of new facts is inappropriate in a reply brief. *See, e.g., Roth v. BASF Corp.*, 2008 WL 2148803, at *3 (W.D.Wash. May 21, 2008). The Court therefore STRIKES the declarations attached to Plaintiffs' Reply, but does not strike the legal argument contained therein.

**Conclusion**

The state has consistently and over a long period of time violated the constitutional rights of the mentally ill—this must stop. The in-jail wait time experienced by Plaintiffs and class members today is far beyond any constitutional boundary. The Court finds that Defendants' failure to provide timely competency evaluation and restoration services to Plaintiffs and class members has caused them to languish in city and county jails for prolonged periods of time, and that this failure violates their right to substantive due process under the Fourteenth Amendment. It is clear to the Court that wait times of less than seven days comport with due process, and that anything beyond seven days is suspect. The Court finds, however, that determination of the precise outer boundary permitted by the Constitution depends on facts to be proven at trial. The Court therefore

declines to find a constitutionally required bright line at this stage in the litigation.

Because Defendants' failure to provide timely services, causing the prolonged incarceration of criminal defendants waiting for court-ordered competency evaluation and restoration, violates the substantive due process rights of those detained, the Court GRANTS Plaintiffs' motion for summary judgment.

The clerk is ordered to provide copies of this order to all counsel.