IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 73106-8-I |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | PUBLISHED OPINION |
| | ) | |
| DARLA PHOEBE KIDDER, | ) | |
| | ) | |
| Respondent. | ) | FILED: December 27, 2016 |

SCHINDLER, J. — The court found Darla Phoebe Kidder incompetent to stand trial.

The court entered an order of commitment to Western State Hospital (WSH) for a 90-day period of competency restoration treatment and stayed the criminal proceedings. Despite repeated court orders to transport Kidder to WSH and finding the State in contempt, Kidder remained in the Skagit County Jail. After expiration of the 90-day order of commitment, the court dismissed the criminal charge against Kidder without prejudice. The State seeks reversal. The State argues the court did not comply with the mandatory statutory procedures and substantial evidence does not support dismissal without prejudice. Because the court complied with the statutory procedures and the court had the authority to dismiss the charge without prejudice under former RCW 10.77.084(1)(c) (2012), and because substantial evidence supports the court order, we affirm dismissal of the criminal charge without prejudice.

Criminal Charge

On July 22, 2014, the State charged Darla Phoebe Kidder with one count of arson in the first degree. The affidavit of probable cause states that on July 18, police responded to a 911 call reporting a fire in the living room and laundry room of the apartment. At the arraignment on July 31, Kidder entered a plea of not guilty.

On August 19, the State filed an amended information charging Kidder with a second count of arson in the first degree. The supplemental affidavit of probable cause states that Kidder called 911 "reporting false fires 8 times between 06/08/14 and 06/17/14." On June 22, police responded to another 911 call reporting a fire in her apartment. The police extinguished a fire "on top of a rolling cart" in the bedroom. Kidder's caregiver told the police that Kidder "has become more and more delusional." The supplemental affidavit of probable cause states, in pertinent part:

> KIDDER[']S caregiver . . . advised that KIDDER has become more and more delusional stating that she is seeing smoke coming from the floors, and that the floors and walls are constantly moving. She advised that initially she was accusing her neighbors of having a marijuana grow, then a week and a half later they had a meth operation going. On the date of the fire she advised that KIDDER was telling her the neighbors were making heroin. She advised recently KIDDER has been dismantling the door handles on her sliding glass door and that the night before the fire she had pulled up the carpet in her residence as she thought she could see lights coming through the floor.

Competency Evaluation

The State did not arraign Kidder on the amended information. Instead, on August 21, the State requested the court order Western State Hospital (WSH) to conduct a competency evaluation of Kidder. The court found there is "reason to doubt the competency of the defendant" and ordered a competency evaluation in the Skagit County Jail by a qualified expert. The court stayed the proceedings and scheduled a

review hearing for September 4, 2014. The court later agreed to continue the review hearing.

On September 12, WSH licensed psychologist Dr. Deanna Frantz conducted an in-jail competency evaluation of Kidder and prepared a report. Dr. Frantz states Kidder has not "previously received a forensic mental health evaluation", has not "been admitted for restoration services[,] nor has she been admitted inpatient on an involuntary or voluntary basis for treatment" at WSH. Kidder described a previous surgery for a brain aneurism, seizures following the surgery, and the need for in-home caregiver services. Dr. Franz states that before the surgery, Kidder used a number of illicit drugs but now uses marijuana daily.

Mental health records showed Kidder was diagnosed with major depressive disorder on July 9, 2008 but she "has not had any documented inpatient psychiatric hospitalizations or contact with [evaluation and treatment] facilities." Chart notes from her primary care doctor "describe Ms. Kidder from 2008 to 2011 as constantly seeking narcotic pain medications," and her doctor "noted 'there has never been a greater source of stress in my professional life than trying to manage this patient's psychiatric and pain issues.' " In 2011, the doctor stopped seeing Kidder.

A June 19, 2013 Skagit Regional Clinics chart note states Kidder was evaluated at the University of Washington and "it had been determined that 'her spells and gait disorder were psychogenic' " and she has "a 'history of brain abscess'." A May 27, 2014 Catholic Community Services Recovery Center assessment diagnosed Kidder with "Marijuana Dependence, Amphetamine Dependence, and Opiate Misuse."

A June 26, 2014 Skagit Valley Hospital "Discharge Summary" states Kidder was admitted after " 'driving recklessly' " and placed on a 72-hour hold in the Behavioral

Health Unit. The Discharge Summary described Kidder as " 'acutely psychotic...

probably with amphetamine toxicity because it was found along with cannabis in the

urine drug screen test.' "[1] Kidder was "discharged home with diagnostic impression of

Psychosis not otherwise specified 'probable cause methamphetamine', Bipolar Disorder

and 'Cluster B Personality Disorder'."

Dr. Franz described the difficulty of a definitive diagnosis but concluded Kidder

exhibits symptoms of mental illness "indicative of a personality disorder" and a need for

further evaluation.

> Ms. Kidder has a long and complicated medical history, the complete
> records of which were not available at the time of this evaluation report.
> Available medical records suggest a mental health history of significant
> personality traits coupled with possible mood disorder, which has been
> described as Depressive Disorder and Bipolar Disorder. . . .
>
> . . . .
>
> Ms. Kidder evidenced delusional thought content in her description of her
> neighbors and her contention they have been manufacturing
> methamphetamine and in the process have been burning her belongings
> through the floors and walls. She described a "cold, chemical cinder" that
> "melts" her television and other belongings. She described seeing "the
> waves" caused by "the bleach they are cooking out of [the
> methamphetamine]". In addition to these reported visual hallucinations,
> she also reported possible auditory hallucinations in the form of "sounds"
> outside her window, which she stated the neighbors were making in order
> to "scare" her out of her apartment. Given Ms. Kidder's complex history
> and presentation, identifying the diagnosis that best explains these
> symptoms is difficult. In fact, there may not be a singular influencing
> diagnosis. Taking into account Ms. Kidder's age at onset and her
> significant use of illicit substances there is a likelihood of Substance/
> Medication Induced Psychotic Disorder. This will be offered for diagnostic
> consideration. However, future diagnostic considerations may expand to
> neurocognitive disorder, mood disorder, or a primary psychotic disorder.
>
> Weaved concurrently throughout Ms. Kidder's presentation with these
> noted symptoms are personality features indicative of a personality
> disorder. Ms. Kidder evidences a variety of personality features, including

---

[1] Alteration in original.

self-damaging impulsivity, affective instability, temper, stress-related paranoid ideation, going to excessive lengths to obtain nurturance and support from others, preoccupation with being taken care of/having to care for self, exaggerated expression of emotion, and rapidly shifting emotion. While some of these symptoms could be indicative of a mood disorder, at this time they appear most indicative of a personality disorder. As such, Other Specified Personality Disorder with Mixed Personality Features is offered.[2]

Dr. Frantz states that although Kidder "does appear to have the capacity to have a factual understanding [of] the nature of the proceedings against her," in her opinion, "as a result of the symptoms of her mental illness, Ms. Kidder currently lacks the capacity to assist in her defense."[3] Dr. Franz recommended inpatient psychiatric treatment.[4]

Should the Court find that Ms. Kidder is not competent to stand trial and that she meets the criteria for competency restoration treatment, inpatient psychiatric treatment is recommended in order to assist in improving Ms. Kidder's mental condition, so that her competency may be restored.

---

[2] Some alteration in original.

[3] Boldface omitted.

[4] Dr. Franz also described the need for a court order authorizing forced medication. The report states, in pertinent part:

The following information describes factors related to the need for a forced medication order:

- Ms. Kidder likely has at least one mental illness for which the first line treatment is psychotropic medication
- Ms. Kidder's history of responding to psychotropic treatment is unknown. While Ms. Kidder reported a history of having been prescribed a "crazy pill", available records do not indicate such.
- Ms. Kidder['s] history of responding to mental health treatment is unknown. Records were not received from Sunrise Services by the date of this evaluation report.
- It is unknown if Ms. Kidder has a history of medication noncompliance. Medical records suggest she has not taken prescription narcotic medications as prescribed, but information was not available regarding possible compliance with any previously prescribed psychotropic medications. However, she appeared willing to take prescribed medications and her history of possible non-compliance was likely overuse (based on her history of diagnosis with Opioid "Misuse") rather than refusal to accept prescribed medications.

Based on these factors it is not clear that it would be necessary for the court to grant judicial authority to treat Ms. Kidder against her will if necessary. The assessment of this possible need would be best left to her treating psychiatrist.

(Emphasis in original.)

Dr. Franz recommended that before any change in custody, the court order an evaluation for civil commitment under chapter 71.05 RCW. "Given the current clinical and historical assessment, I do recommend an evaluation by a [designated mental health professional] for civil commitment under RCW 71.05 prior to change in custody."

90-Day Commitment Order

The court held a hearing on the competency evaluation report on September 24, 2014. The court found Kidder was not competent to stand trial and stayed the proceedings for 90 days. The order commits Kidder to WSH "for a period of not more than" 90 days "for competency restoration as provided for in RCW 10.77.084 and .086." The order states WSH "shall submit a written report" and the report shall include:

(a) a description of the nature of the evaluation;
(b) a diagnosis or description of the current mental status of the defendant;
(c) whether the defendant suffers from a mental disease or defect, or has a developmental disability;
(d) if the defendant suffers from a mental disease or defect, or has a developmental disability, an opinion as to his/her capacity to understand the proceedings against him/her and to assist in his/her own defense;
(e) an opinion as to whether the defendant should be evaluated by a designated mental health professional under chapter 71.05, RCW;
(f) if the defendant is incompetent and his/her incompetence is solely due to a developmental disability, or if the defendant is not likely to regain competency, then the report shall include an assessment of the defendant's future dangerousness which is evidence-based regarding predictive validity.

The court scheduled a review hearing for December 18, 2014.

Motion to Transport Kidder to WSH

Kidder was not transported to WSH for competency restoration treatment. On November 17, Kidder filed a motion for "Immediate Transport to WSH." Kidder argued she had a statutory and due process right to receive prompt restorative treatment.

Kidder argued time "is of the essence" because only "approximately 32 days" remained for restoration treatment under RCW 10.77.086. Kidder requested the court order WSH to transport her "by Friday, November 21, 2014 by 4:30 p.m."

Defense counsel submitted an affidavit in support of the motion for immediate transport. The attorney states that on October 7, WSH told counsel it would be "70[ plus] days before Ms. Kidder would be admitted"; and WSH did not respond to a November 5 inquiry about admission.

Defense counsel states that while in custody at the Skagit County Jail, Kidder was "decompensate[ing] mentally" and having a number of serious medical issues, including seizures and difficulty standing and walking. The affidavit states, in pertinent part:

> . . . . Ms. Kidder was assisted by a caregiver with daily tasks prior to her incarceration.
> . . . . I received medical records documenting Ms. Kidder's medical issues of surgical evacuation (craniotomy) for a brain abscess in 2007, seizure disorder, pseudoseizures, occipital neuralgiform symptoms, cervicalgia, cardiac catheter, use of Coumadin and bipolar disease.
> . . . . On September 24, 2014, I sent via email to the jail medical deputy . . . information giving [sic] to me about Ms. Kidder requiring Coumadin for a genetic blood disorder and the fact that Ms. Kidder does have seizures. This information came directly from Darla Kidder's mother.
> . . . . During my visits with Ms. Kidder, I have observed her having difficulty standing and walking. If she does not have a walker or assistance available to her, I have observed her use the jail walls to get from one place to another. When queried, Ms. Kidder responds that her balance issues and seizures are side-affects [sic] related to her brain surgery.
> . . . . I have observed Ms. Kidder distraught due to her experiencing seizures in custody, lack of Coumadin for her genetic blood disorder, lack of personal assistance with daily tasks because of her medical issues; as well as seeing her decompensate mentally in custody.

At the conclusion of the November 20 hearing, the court ordered WSH to "transport Ms. Kidder no later than 430pm on Friday, November 21, 2014." WSH did not comply with the order to transport Kidder by 4:30 p.m. on November 21.

Order of Contempt and Sanctions

On November 24, the court entered a show cause order. The order directed the Washington State Department of Social and Health Services (DSHS) and WSH to appear on December 3 and show cause why the State should not be held in contempt "for failing to comply with this Court's order filed on November 20, 2014 for immediate transport to Western State Hospital by 4:30 p.m. on Friday, November 21, 2014."

DSHS and WSH filed a brief in response—"Resistance to Finding of Contempt." WSH admitted it received the September 24 order for competency restoration treatment of Kidder on October 7 and the order "required the Defendant to be commitment to WSH for a 90-day period of competency restoration." But WSH argued that because the order did not establish a specific date for admission and the law does not address how long a criminal defendant can remain in jail while waiting for evaluation or competency restoration, the court should not find the State in contempt. WSH also argued a reasonable delay in admission for restoration treatment did not support either a finding of contempt or a due process violation.

In support, WSH submitted the declaration of WSH Medical Director Dr. Brian Waiblinger. Dr. Waiblinger states WSH received the September 24 order for competency restoration treatment of Kidder but "[a]s of October 7, . . . WSH did not have the ability to admit Ms. Kidder for restoration treatment, so she was placed on a waitlist for admission." According to Dr. Waiblinger, WSH determines admission for

competency restoration services by "the order in which the court orders are filed for each group."

> [I]ndividuals charged with Class A or serious Class B and non-serious Class B or Class C felonies awaiting admission to begin their initial competency restoration periods are admitted in the order in which the court orders are filed for each group.

Dr. Waiblinger states the "Legislature has authorized WSH to staff a finite numbers [sic] of beds" and WSH "is currently running at near 100 percent occupancy."

> All existing space with the security features required to house forensic patients is being used. Aside from vacancies created when defendants admitted for competency evaluation or restoration are discharged back to the jail, vacancies for competency-related admissions occur only when there are unexpected cancelations of admissions, when rooms require maintenance, or other exigencies. The current waitlist is approximately 120 defendants.

Although the goal of WSH is to "admit all patients awaiting competency services at the earliest possible date," as of "October 23, 2014, initial 90 day non personal recognizance felony restoration cases were waiting approximately 65 days." Dr. Waiblinger states that "[a]pproximately 15 patients awaiting restoration treatment are admitted each week" and Kidder "is currently expected to be admitted to WSH by the week ending January 9, 2015." But "[o]n occasion," WSH "will admit a defendant who presents with severe psychiatric symptoms resulting in psychiatrically related medical issues that justify admitting that person out of order."

WSH Center for Forensic Services Community Program Director Roberta Kresse testified at the show cause hearing. Kresse agreed WSH can "move up" a patient "on the list" if there are severe psychiatric symptoms. But Kresse testified WSH did not review the in-jail competency evaluation of Kidder or the need for restoration treatment.

9

Kresse described the length of time for competency restoration treatment. Kresse testified WSH can determine whether competency can be restored after approximately 70 days of treatment. WSH typically administers medications to treat patients and it takes "a few weeks" to determine whether the medication is effective. If the medication is not effective, WSH prescribes a different medication. Kresse testified that determining the correct dosage also takes "a few weeks."

> [W]e have a whole treatment program designed to assess whether the patient, due to perhaps meds or perhaps who knows, you know, the psychiatric illness waxes and wanes. In any case, so they are put in classes where they talk about what happens. They talk about their lawyer. They talk about what is the Court going to look like. We do kind of a mock courtroom thing. And then that takes some time to assess are they understanding this? Are their questions, you know, legitimate? Are they making sense? Are they kind of coming out of that confused and delusional thinking that, you know, that brought them to this place in the first place. So, yeah, that can take a while. And then so by an average of 69 days either the psychologist is saying yeah, he's ready to go; he can go back and go to court. Or they are saying we can't restore competency.

WSH argued the testimony presented about the reasons for the backlog and the procedures WSH used for admission showed the State did not intentionally violate the order.

> And that's why we brought in the testimony that we've had today to establish the procedures that Western State Hospital has in place, the reasons for the backlog, the reasons that we have the wait list, and the reasons why, for equitable reasons Western State Hospital doesn't simply move individual defendants up to the front of the wait list.

WSH also argued the "statute establishes 90 days from the date of admission to the hospital," not the date of the court commitment order—"[T]he 90 days doesn't start on the issuing of the order but on admission to the hospital."

The court found the State in contempt. The unchallenged findings establish the State has the primary responsibility to ensure defendants "with Mental Health Issues

and a need for restorative services" receive "those services in a timely manner." The court found, "It is not sufficient to attempt to follow a waitlist." The court found the State "had [the] ability to comply with the Order but chose not to do so because of its procedure." The court concluded, "The State is not in compliance with the Order dated November 20, 2014" and the State "is in contempt."

The order allows the State to "purge this contempt by picking up Ms. Kidder by 4:30 on December 4, 2014, and transporting [her] to Western State Hospital to admit for the ordered restoration." The court scheduled a review hearing for December 10, 2014 at 9:00 a.m. "for consideration of sanctions should the State fail to purge the contempt." The State did not transport Kidder to WSH by December 4.

On December 9, Kidder filed a motion to find WSH in contempt and impose sanctions of $16,000 and $2,000 per day beginning on December 3, 2014. On December 12, the court entered an order finding WSH in contempt and imposing sanctions. The order states WSH "willfully failed" to comply with the December 3 court order or purge the contempt. The court imposed sanctions in the amount of $200 per day—"$100 per day jail housing cost, $50 per day for general services provided to Ms. Kidder while housed in the jail and $50 per day punitive sanction."

Motion for Release

On December 18, defense counsel asked the court to release Kidder on personal recognizance to "attend her medical [appointments]." The State objected. The court denied the motion without prejudice to renewing the motion if Kidder "is not transported to WS[H]."

On December 22, Kidder's attorney filed an affidavit in support of the motion for release on personal recognizance. Defense counsel states Kidder would reside with a

11

caregiver and the caregiver "would be in the home at all times with Ms. Kidder" and provide transportation.

On December 31, the court entered an order on the motion for release on personal recognizance. The order states that if Kidder "is not picked up by WSH by 1/9/15," she shall be released to the caregiver.

Motion to Dismiss

On December 30, Kidder filed a motion to dismiss. Kidder argued the September 24, 2014 90-day competency restoration order had expired—"By the date of the hearing on January 7, 2015, Ms. Kidder's proceedings will have been stayed for 139 days and she will have been held in confinement for 173 days." Kidder argued she had a statutory and constitutional right to receive competency restoration treatment and the unreasonable delay in providing treatment violated due process.

In support of the motion to dismiss, defense counsel submitted a copy of the December 22, 2014 summary judgment order in Trueblood v. Washington State Department of Social & Health Services, 73 F. Supp. 3d 1311 (W.D. Wash. 2014).

In Trueblood, pretrial defendants who were found incompetent to stand trial but remained in jail and did not receive a court-ordered competency evaluation or restoration services filed a class action lawsuit against DSHS, WSH, and Eastern State Hospital alleging violation of the right to due process. Trueblood v. Wash. State Dep't of Social & Health Servs., 101 F. Supp. 3d 1010, 1014 (W.D. Wash. 2015). The court certified the class as follows:

> All persons who are now, or will be in the future, charged with a crime in the State of Washington and: (a) who are ordered by a court to receive competency evaluation or restoration services through the Washington State Department of Social and Health Services ("DSHS"); (b) who are

waiting in jail for those services; and (c) for whom DSHS receives the court order.[5]

The class members filed a motion for summary judgment arguing in-jail waiting times for court-ordered competency evaluations and restoration services violated due process. In opposition, the State argued a "certain amount of in-jail wait time is both reasonable and constitutional." Trueblood, 73 F. Supp. 3d at 1315. The State conceded that " 'current wait times for many criminal defendants are excessive and indefensible' " but "detail[ed] the challenges they face," including funding, lack of qualified staff, and lack of facilities. Trueblood, 73 F. Supp. 3d at 1313-14.

The summary judgment order states, " 'Incapacitated criminal defendants have liberty interests in freedom from incarceration and in restorative treatment' " and the right to receive treatment within a reasonable period of time. Trueblood, 73 F. Supp. 3d at 1314 (quoting Or. Advocacy Ctr. v. Mink, 322 F.3d 1101, 1121 (9th Cir. 2003)). The court rejected the argument that lack of funds, staff, or facilities justified violation of the liberty interests of the class members. Trueblood, 73 F. Supp. 3d at 1315-16. The court concluded the "failure to provide timely services, causing prolonged incarceration of criminal defendants waiting for court-ordered competency evaluation and restoration, violates the substantive due process rights of those detained." Trueblood, 73 F. Supp. 3d at 1318.[6] The court scheduled a trial on the "precise outer boundary" of wait times

---

[5] Trueblood, 101 F. Supp. 3d at 1014.

[6] The summary judgment order states, in pertinent part:

The state has consistently and over a long period of time violated the constitutional rights of the mentally ill—this must stop. The in-jail wait time experienced by Plaintiffs and class members today is far beyond any constitutional boundary. The Court finds that Defendants' failure to provide timely competency evaluation and restoration services to Plaintiffs and class members has caused them to languish in city and county jails for prolonged periods of time, and that this failure violates their right to substantive due process under the Fourteenth Amendment.

Trueblood, 73 F. Supp. 3d at 1317-18.

"permitted by the Constitution." Trueblood, 73 F. Supp. 3d at 1317.[7]

At the January 7 hearing on the motion to dismiss, defense counsel informed the court that the attorneys had received an e-mail from a WSH psychologist. The attorney told the court that the January 6, 2015 e-mail to the prosecutor and defense counsel states Kidder "was admitted to WSH on 1/6/15 for up to 90 days for competency restoration and evaluation regarding her competency to proceed to trial," and Kidder is "due back to detention by 4/2/15." But in the e-mail, the psychologist asks the attorneys to "fax us an order specifying the court's intended return date . . . [i]f this is not the court's intent." The e-mail also states an "evaluator has not yet been assigned to the case." According to the psychologist, "[e]valuators are assigned either two weeks prior to the scheduled departure date [of April 2, 2015], or when the defendant is referred for evaluation by the treatment team."

---

[7] Following trial, the court entered a permanent injunction ordering the State to (1) provide "in-jail competency evaluations within seven days of the signing of a court order", (2) "admit persons ordered to have their competency evaluated in a state hospital into that hospital within seven days of the signing of the court order", and (3) "admit persons ordered to receive competency restoration services into a state hospital within seven days of the signing of a court order calling for restoration services." Trueblood, 101 F. Supp. 3d at 1023-24. The State appealed the injunction on only the seven-day requirement for an in-jail competency evaluation. Trueblood v. Wash. State Dep't of Social & Health Servs., 822 F.3d 1037 (9th Cir. 2016).

The Ninth Circuit reversed the seven-day mandate for an in-jail competency evaluation and remanded because the court did not "account for any period from issuance of the court order to receipt" or consider a good cause exception. Trueblood, 822 F.3d at 1045. The court also notes:

> During the course of this litigation, Washington amended its law to set a fourteen-day maximum time limit for competency evaluations, although the legislation incorporated a non-binding seven-day performance goal. Wash. Rev. Code § 10.77.068. The court's findings and conclusions do not take into consideration this legislative change, nor do they consider whether this time limit would pass constitutional muster. On remand, the district court should evaluate the effects of the revised legislation.

Trueblood, 822 F.3d at 1046 (footnote omitted).

On remand, the court modified the injunction to require the State provide in-jail competency evaluations within 14 days of the signed court order or request an extension for good cause. Trueblood v. Wash. State Dep't of Social & Health Servs., No. C14-1178-MJP, 2016 WL 4268933, at *1, *16 (W.D. Wash. 2016). The injunction requiring the State to provide restoration services within 7 days of the signing of the court order remains in place.

Defense counsel argued that because the 90-day restoration order had expired and the State did not request an extension of the restoration period, the court should grant the motion to dismiss the pending charge.

> So basically my argument is this: Although Ms. Kidder has been transported there is no current restoration order. I agree . . . the statute is clear about the time period. And as I've said under [RCW] 10.77.086 there's been no request for a secondary time period. Ms. Kidder actually has a right to a jury trial on that particular second restoration period, and there's been no motion for it. So I'm saying that that actually cannot be imposed at this time because the restoration order expired without extension. So she's being held at Western with really no purpose at this point.
>
> . . . .
> . . . That's why we're asking for the serious relief of dismissal because we have specifically a significantly mentally ill woman with significant medical issues who has been incarcerated since August, who has been held waiting transport as of today. She was transported yesterday, which would have been 104 days so that 90-day period for restoration has expired.

Defense counsel also argued the failure of the State to provide competency restoration services in a reasonable time violated due process. The attorney pointed out that WSH conceded Kidder was a member of the class certified by the district court in Trueblood.

> According to the Attorney General during their appearance on record, and I believe it was at the imposition of sanction Ms. Kidder is a member of that class. So that colors my argument to this Court. Because the State Attorney General has said Ms. Kidder . . . is a member of that class. So that order does affect . . . Ms. Kidder.

The State argued that because "the lack of beds and the lack of resources" are "beyond our control," dismissal is not the appropriate remedy. The State conceded, "Obviously if they are unable to be restored then dismissal without prejudice is appropriate." But the State "urge[d] the Court not to dismiss this matter" and "proceed with other remedies some of which have already been ordered by the Court."

Based on the e-mail from WSH and the expiration of the statutory time period, defense counsel argued that "restoration for Ms. Kidder isn't even a viable process right now." The court reserved ruling on the motion to dismiss.

The next day, the State filed a motion for an order shortening time to file a motion for another 90-day order for competency restoration. Defense counsel filed a motion for an order to transport Kidder back from WSH.

On January 9, the trial court entered an order dismissing the criminal charge against Kidder without prejudice and ordered an evaluation for civil commitment under chapter 71.05 RCW. The order states:

> **THIS COURT FINDS** 1) The [defendant] has been charged with Arson [first degree], alleged to have occurred 7/18/14. 2) A competency evaluation report was filed 10/14/14[.] 3) [Defendant] has been diagnosed with possible Depressive & Bipolar disorders [plus] other specified personality disorders [with] mixed personality features. 4) [Defendant] lacks the capacity to assist in her defense. 5) She is a danger to herself and the community. 6) She has fairly recently been unable to deal with daily tasks; decompensates. 7) She had a craniotomy in 2007. 8) [Probable cause] exists that the [defendant] committed the crime charged[.] 9) The [defendant] is incompetent to stand for trial, and it is unlikely that she will become competent [within] a reasonable period of time[.] 10) The charge herein should be dismissed [without] prejudice[.] 11) The [defendant] should remain at Western State Hospital for a reasonable period of time for evaluation for filing of a RCW 71.05 petition. 12) These findings were confirmed by the Court's personal view of the [defendant] in court. 13) The [defendant] is not to be released into the community [without] being evaluated under RCW 71.05.
> **IT IS HEREBY ORDERED, ADJUDGED AND DECREED** As Above.

Compliance with Chapter 10.77 RCW

The State seeks reversal of the order of dismissal without prejudice. The State argues the trial court erred in dismissing the criminal charge against Kidder without

prejudice because the court did not adhere to the mandatory statutory procedures under chapter 10.77 RCW.[8]

It is a fundamental principle of federal and state law that an incompetent defendant may not stand trial. In Pate v. Robinson, 383 U.S. 375, 378, 86 S. Ct. 836, 15 L. Ed. 2d 815 (1966), the Court held the "conviction of an accused person while he is legally incompetent" violates the due process clause of the Fourteenth Amendment to the United States Constitution. See also Drope v. Missouri, 420 U.S. 162, 171-72, 95 S. Ct. 896, 43 L. Ed. 2d 103 (1975) (it is a fundamental due process right not to be tried while legally incompetent); Medina v. California, 505 U.S. 437, 439, 112 S. Ct. 2572, 120 L. Ed. 2d 353 (1992) ("It is well established that the Due Process Clause of the Fourteenth Amendment prohibits the criminal prosecution of a defendant who is not competent to stand trial.").

Under Jackson v. Indiana, 406 U.S. 715, 738, 92 S. Ct. 1845, 32 L. Ed. 2d 435 (1972), whether a defendant is likely to regain competency is governed by the due process standard of reasonableness. In Jackson, the Court held that a defendant "who is committed solely on account of his incapacity to proceed to trial" cannot be held "more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future." Jackson, 406 U.S. at 738. And "even if it is determined that the defendant probably soon will be able to stand trial, his continued commitment must be justified by progress toward that goal." Jackson, 406 U.S. at 738. "At the least, due process requires that

---

[8] In 2015, the legislature made several amendments to chapter 10.77 RCW. See LAWS OF 2015, 1st Spec. Sess., ch. 7. The order of dismissal in this case was entered before the July 1, 2015 effective date of the 2015 amendments to the statutes pertinent to our analysis here. LAWS OF 2015, 1st Spec. Sess., ch. 7, §§ 4, 5. We address the issues presented in this appeal under the version of the statutes in effect at the time of the dismissal order.

17

the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." Jackson, 406 U.S. at 738.

The constitutional standard for competency to stand trial is whether the defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him."[9] Dusky v. United States, 362 U.S. 402, 402, 80 S. Ct. 788, 4 L. Ed. 2d 824 (1960).

In 1973, the Washington State Legislature adopted a comprehensive statutory scheme for addressing the competency of criminal defendants. LAWS OF 1973, 1st Ex. Sess., ch. 117. In In re Personal Restraint of Fleming, 142 Wn.2d 853, 862, 16 P.3d 610 (2001), our Supreme Court held the statute afforded greater protection than the constitutional standard. RCW 10.77.050 states that "[n]o incompetent person shall be tried, convicted, or sentenced for the commission of an offense so long as such incapacity continues."

In State v. Heddrick, 166 Wn.2d 898, 215 P.3d 201 (2009), the court held the " 'failure to observe procedures adequate to protect this right is a denial of due process.' " Heddrick, 166 Wn.2d at 904 (quoting State v. O'Neal, 23 Wn. App. 899, 901, 600 P.2d 570 (1979). "Chapter 10.77 RCW provides such a procedure" and the " '[p]rocedures of the competency statute . . . are mandatory and not merely directory.' " Heddrick, 166 Wn.2d at 904[10] (quoting Fleming, 142 Wn.2d at 863).

Here, the record shows the trial court followed the mandatory procedures of the competency statute. Under RCW 10.77.060, when there is reason to doubt

---

[9] Internal quotation marks omitted.
[10] Alterations in original.

competency to stand trial, the court must order an expert to evaluate the defendant's mental condition. Following the evaluation, if the court finds the defendant incompetent, the court may stay the criminal proceedings under RCW 10.77.084(1)(a) and commit the defendant for competency restoration treatment "for a period of no longer than ninety days" under former RCW 10.77.086(1)(a) (2013).[11]

Before the expiration of the 90-day commitment, if the court finds by a preponderance of the evidence that the defendant is incompetent, the court has the option of extending the order of commitment for an additional 90 days. RCW 10.77.086(3). But there is a "right to demand that the hearing be before a jury" on whether to extend the commitment for an additional 90 days. RCW 10.77.086(3).

Here, the State requested a competency evaluation by WSH under RCW 10.77.060(1)(a).[12] On August 21, the court ordered an in-jail competency evaluation of Kidder under RCW 10.77.060(1)(c).[13] The competency evaluation report complied with the requirements of RCW 10.77.060(3).[14]

---

[11] LAWS OF 2013, ch. 289, § 2.

[12] RCW 10.77.060(1)(a) states, in pertinent part:

Whenever . . . there is reason to doubt [a defendant's] competency, the court on its own motion or on the motion of any party shall either appoint or request the secretary to designate a qualified expert or professional person, who shall be approved by the prosecuting attorney, to evaluate and report upon the mental condition of the defendant.

[13] RCW 10.77.060(1)(c) states, in pertinent part:

The evaluator shall assess the defendant in a jail, detention facility, in the community, or in court to determine whether a period of inpatient commitment will be necessary to complete an accurate evaluation.

[14] RCW 10.77.060(3) states, in pertinent part:

The report of the evaluation shall include the following:
    (a) A description of the nature of the evaluation;
    (b) A diagnosis or description of the current mental status of the defendant; [and]
    (c) If the defendant suffers from a mental disease or defect, or has a developmental disability, an opinion as to competency.

Following the in-jail competency evaluation and report, the trial court found

Kidder incompetent and stayed the proceedings under RCW 10.77.084(1)(a). RCW

10.77.084(1)(a) provides:

> If at any time during the pendency of an action and prior to judgment the court finds, following a report as provided in RCW 10.77.060, a defendant is incompetent, the court shall order the proceedings against the defendant be stayed except as provided in subsection (4) of this section.[15]

The court ordered Kidder committed to WSH for competency restoration under

former RCW 10.77.086(1)(a). Former RCW 10.77.086(1)(a) states, in pertinent part:

> If the defendant is charged with a felony and determined to be incompetent, until he or she has regained the competency necessary to understand the proceedings against him or her and assist in his or her own defense, or has been determined unlikely to regain competency pursuant to RCW 10.77.084(1)(b), but in any event for a period of no longer than ninety days, the court:
> (i) Shall commit the defendant to the custody of the secretary who shall place such defendant in an appropriate facility of the department for evaluation and treatment.[16]

The State argues the court erred in finding Kidder was unlikely to be restored

because the finding was "made short of restoration efforts and without expert opinion" in

violation of former RCW 10.77.084(1)(b) (2012).[17] Former RCW 10.77.084(1)(b) states,

---

[15] Subsection (4) addresses defendants receiving medication for physical or mental problems and is not applicable here. RCW 10.77.084(4).

[16] Prior to the 2015 amendments, a statute set a performance target of 7 days or less for the state to "extend an offer of admission to a defendant in pretrial custody for . . . evaluation services related to competency." Former RCW 10.77.068(1)(a)(i) (LAWS OF 2012, ch. 256, § 2). The 2015 statute currently in effect provides both performance targets and maximum time limits. RCW 10.77.068(1)(a). For "a state hospital to extend an offer of admission to a defendant in pretrial custody for legally authorized inpatient restoration treatment related to competency," the performance target is 7 days or less and the maximum time limit is 14 days. RCW 10.77.068(1)(a)(ii).

[17] LAWS OF 2012, ch. 256, § 5. We note the 2015 amendments to RCW 10.77.084 did not change subsection (1)(a) or subsections (2) through (5). LAWS OF 2015, 1st Spec. Sess., ch. 7, § 4.

in pertinent part:

> At the end of the mental health treatment and restoration period, if any, or at any time a professional person determines competency has been, or is unlikely to be, restored, the defendant shall be returned to court for a hearing. . . . If competency has not been restored, the proceedings shall be dismissed without prejudice.

Kidder argues the court order of dismissal without prejudice complies with former RCW 10.77.084(1)(c). Former RCW 10.77.084(1)(c) states:

> If at any time during the proceeding the court finds, following notice and hearing, a defendant is not likely to regain competency, the proceedings shall be dismissed without prejudice and the defendant shall be evaluated for civil commitment proceedings.

We review questions of statutory interpretation de novo. In re Marriage of Buecking, 179 Wn.2d 438, 443, 316 P.3d 999 (2013). Our goal is to ascertain and give effect to the intent of the legislature. Wright v. Jeckle, 158 Wn.2d 375, 379, 144 P.3d 301 (2006). Where a statute's meaning is plain from the words used, we give effect to this plain meaning as the expression of legislative intent. Buecking, 179 Wn.2d at 444. Statutes are to be read together, whenever possible, "to achieve a 'harmonious total statutory scheme . . . which maintains the integrity of the respective statutes.' " Employco Pers. Servs., Inc. v. City of Seattle, 117 Wn.2d 606, 614, 817 P.2d 1373 (1991)[18] (quoting State v. O'Neill, 103 Wn.2d 853, 862, 700 P.2d 711 (1985)). An interpretation that reads language in isolation is too limited and fails to apply this rule. Jongeward v. BNSF Ry., 174 Wn.2d 586, 595, 278 P.3d 157 (2012).

Former RCW 10.77.084(1)(b) and former RCW 10.77.084(1)(c) authorize the court to dismiss criminal charges without prejudice. Former RCW 10.77.084(1)(b) gives the court the authority to dismiss without prejudice "[a]t the end of the mental health

---

[18] Alteration in original.

treatment and restoration period, if any, or at any time a professional person determines competency has been, or is unlikely to be, restored."[19] Former RCW 10.77.084(1)(c) gives the court the authority to dismiss without prejudice "[i]f at any time during the proceeding the court finds, following notice and hearing, a defendant is not likely to regain competency."

Here, the undisputed record establishes Kidder did not receive competency restoration services before expiration of the 90-day commitment period. Other than the initial in-jail competency evaluation and recommendation for restoration treatment, no determination of competency by a mental health professional was made before expiration of the 90-day order for commitment.

In accord with former RCW 10.77.084(1)(c), following notice and hearing, the court found it is "unlikely that [Kidder] will become competent [within] a reasonable period of time" and ordered Kidder to remain at WSH for evaluation for filing a chapter 71.05 RCW petition.

The State also contends substantial evidence does not support the court finding it is "unlikely that [Kidder] will become competent [within] a reasonable period of time." We review a trial court's challenged findings of fact for substantial evidence. Sunnyside Valley Irrigation Dist. v. Dickie, 149 Wn.2d 873, 879, 73 P.3d 369 (2003). Substantial evidence is "defined as a quantum of evidence sufficient to persuade a rational fair-minded person the premise is true." Sunnyside Valley, 149 Wn.2d at 879. We will not "disturb findings of fact supported by substantial evidence even if there is conflicting evidence." Merriman v. Cokeley, 168 Wn.2d 627, 631, 230 P.3d 162 (2010).

---

[19] A "professional person" is a licensed psychiatrist, psychologist, or social worker who meets the requirements specified in the definitional statute. RCW 10.77.010(18).

Unchallenged findings of fact are verities on appeal. McCleary v. State, 173 Wn.2d 477, 514, 269 P.3d 227 (2012). A trial judge has wide discretion, and we defer to the trial court's judgment of a defendant's mental competency. State v. Oritz, 104 Wn.2d 479, 482, 706 P.2d 1069 (1985).

The unchallenged findings and record support finding Kidder was not likely to regain competency within a reasonable time. The findings establish Kidder "has been diagnosed with possible Depressive & Bipolar disorders[, plus] other specified personality disorders [with] mixed personality features," and a craniotomy in 2007. While waiting in jail for restoration treatment, Kidder decompensated. The court found Kidder is a danger to herself and the community, lacks the capacity to assist in her defense, and is incompetent to stand trial. "These findings were confirmed by the Court's personal view of the [defendant] in court."

Yet, despite repeated orders and finding the State in contempt, Kidder was not transported to WSH for restoration treatment until after the 90-day commitment order expired. The record established it would take approximately 70 days after WSH began restorative treatment to determine whether treatment was effective and competency could be restored.

We conclude the court had the authority under former RCW 10.77.084(1)(c) to dismiss the criminal charge against Kidder without prejudice and the record establishes the State's failure to provide Kidder with restorative treatment within a reasonable time

violated her right to due process.

We affirm dismissal of the criminal charge without prejudice.

WE CONCUR: