# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>　　　　　Respondent,<br><br>v.<br><br>KENNETH ALLEN CLARK,<br><br>　　　　　Appellant. | No. 76027-1-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br>FILED: January 17, 2017 |

LEACH, J. — Kenneth Clark appeals his convictions and sentence for first degree assault, second degree assault, unlawful imprisonment, and felony harassment. He claims that a 96-day stay in jail while waiting for competency restoration treatment violated his substantive due process rights and requires that the court dismiss his charges. He also claims that CrR 3.3(h) and CrR 8.3(b) require dismissal because governmental mismanagement caused the delay. Alternatively, Clark claims, he is entitled to dismissal because he did not receive effective assistance of counsel. Clark cites no authority that would permit the court to vacate his conviction for the due process violation he alleges. Because Clark's other arguments lack merit, we affirm Clark's convictions.

Clark also challenges the imposition of certain mandatory legal financial obligations (LFOs) that the trial court found he could not pay. We agree that the trial court committed an error. A trial court must consider the defendant's ability

to pay even mandatory LFOs when, as in this case, the defendant suffers from a mental health condition.[1]

We affirm in part and reverse in part. We remand to the trial court with direction to consider Clark's ability to pay the criminal filing fee and the deoxyribonucleic acid (DNA) testing fee.

BACKGROUND

This case arises out of an altercation between Clark and his live-in girlfriend, Marie Epps, that took place on August 3, 2014. According to Epps's trial testimony, she was upset about Clark's drug use and told him that she did not want to be with him anymore. Epps testified that she had "proof" of Clark's drug use and could tell by his behavior that he was using drugs. Clark and Epps got into an argument, which escalated into a physical fight. At one point, Clark pinned Epps to the ground, lying on top of her, and either bit or cut off her ear. Epps testified that after that, Clark looked like he was shocked and left.

On August 6, 2014, the State charged Clark with assault in the first degree, assault in the second degree, unlawful imprisonment, and felony harassment. On August 19, due to concerns about Clark's fitness to proceed, the court ordered a preliminary competency evaluation. On August 28, a mental health specialist determined that Clark was not competent to stand trial at that time but could likely regain competency after a restoration period at Western

---

[1] RCW 9.94A.777(1).

State Hospital (WSH). On September 3, the court ordered a 90-day commitment so Clark could undergo treatment to regain competency.

Because WSH had no available beds, Clark remained in the Pierce County Detention and Corrections Center until December 8, 2014. Clark moved to dismiss for the 96-day delay in admitting him to WSH for restoration under CrR 3.3 and for governmental misconduct under CrR 8.3(b). The trial court denied Clark's motion. On March 5, 2015, the trial court found Clark competent to stand trial. The trial court denied a second motion to dismiss for speedy trial violations and governmental misconduct. On July 20, 2015, the case proceeded as a bench trial.

During pretrial motions, the State moved to admit prior incidents of domestic violence between Clark and Epps. Defense counsel objected, suggesting that the court reserve ruling on the issue until it had heard Epps's testimony. The trial court reserved ruling as asked. At trial, defense counsel questioned Epps about an assault she reported to the police.

The court convicted Clark as charged and imposed $800 in LFOs, including a $500 crime victim penalty assessment, a $100 DNA testing fee, and a $200 criminal filing fee.

## DISCUSSION

### Substantive Due Process Violation

Clark claims that a 96-day delay in obtaining competency restoration services violated his substantive due process rights and that the remedy for this

violation is dismissal of charges. "The Supreme Court has long recognized that individuals have a fundamental liberty interest in being free from incarceration absent a criminal conviction, and that there are corresponding constitutional limits on pretrial detention."[2] A court decides whether the State has violated the substantive due process rights of incapacitated criminal defendants by balancing their liberty interests in freedom from incarceration and in restorative treatment against the legitimate interests of the State.[3] "At the least, due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed."[4] The government has a legitimate regulatory interest in pretrial detention when it prevents danger to the community.[5] "But once a court declares a defendant incompetent to stand trial, that interest is displaced by the State's interest in 'determin[ing] whether there is a substantial probability that he will attain [ ] capacity in the foreseeable future.'"[6]

To support his due process claim, Clark relies on the U.S. District Court's decision in Trueblood I.[7] Trueblood I was a class action civil suit brought by

---

[2] Trueblood v. Wash. State Dep't of Soc. & Health Servs., 73 F. Supp. 3d 1311, 1314 (W.D. Wash. 2014) (Trueblood I).

[3] Or. Advocacy Ctr. v. Mink, 322 F.3d 1101, 1121 (9th Cir. 2003).

[4] Jackson v. Indiana, 406 U.S. 715, 738, 92 S. Ct. 1845, 32 L. Ed. 2d 435 (1972).

[5] United States v. Salerno, 481 U.S. 739, 748, 107 S. Ct. 2095, 95 L. Ed. 2d 697 (1987) ("We have repeatedly held that the Government's regulatory interest in community safety can, in appropriate circumstances, outweigh an individual's liberty interest.").

[6] Disability Law Ctr. v. Utah, 180 F. Supp. 3d 998, 1010 (D. Utah 2016) (alterations in original) (quoting Jackson, 406 U.S. at 738).

[7] Trueblood v. Wash. State Dep't of Social & Health Servs., 73 F. Supp. 3d 1311 (W.D. Wash. 2014) (Trueblood I).

pretrial detainees suspected of being mentally incompetent who waited in jail for an average of 29 days before receiving a competency evaluation and 15 days for restoration at WSH, and 50 days for evaluation and 17 days for restoration at Eastern State Hospital.[8] In Trueblood I, the court held that these delays violated the class members' due process rights.[9] In Trueblood II,[10] the court ordered the Department of Social and Health Services (DSHS) to provide competency evaluations to pretrial detainees within 7 days of an order calling for an evaluation (amended to 14 days on remand) and to provide restoration services within 7 days of an order calling for treatment. Similar to the class members in the Trueblood cases, Clark waited 9 days for a competency evaluation and an additional 96 days to receive restoration services. We assume that the 96-day delay violated Clark's substantive due process rights, but he does not show that the remedy of this violation is a dismissal of charges.

Clark mistakenly asserts that Trueblood I dismissed the charges against class members. In Trueblood II the court entered a permanent injunction, ordering DSHS to provide timely services, but the court made no ruling about the criminal charges of class members.[11] In fact, none of the Trueblood decisions

---

[8] Trueblood I, 73 F. Supp. 3d at 1313.

[9] Trueblood I, 73 F. Supp. 3d at 1317.

[10] Trueblood v. Wash. State Dep't of Soc. & Health Servs., 101 F. Supp. 3d 1010, 1023-24. (W.D. Wash. 2015) (Trueblood II), was vacated and remanded by Trueblood v. Wash. State Dep't of Soc. & Health Servs., 822 F.3d 1037 (9th Cir. 2016). On remand, the court modified its injunction to 14 days. Trueblood v. Wash. State Dep't of Soc. & Health Servs., No. C14-1178-MJP, 2016 WL 4268933, at *1 (W.D. Wash. Aug. 15, 2016).

[11] Trueblood II, 101 F. Supp. 3d at 1023-24.

dismissed criminal charges or proposed that such a remedy would be appropriate. The delay criminal defendants face in gaining access to mental health treatment troubles this court. But Clark cites no authority to show that the remedy for this failure is dismissal of criminal charges. We decline to create this remedy for the substantive due process violation Clark alleges.

### Speedy Trial

Clark also claims the trial court erred when it denied his two motions to dismiss for speedy trial violations under CrR 3.3.[12] An appellate court reviews the trial court's application of CrR 3.3 de novo.[13] Generally, a defendant who is in custody must be brought to trial within 60 days of arraignment.[14] "A charge not brought to trial within the time limit determined under [CrR 3.3] shall be dismissed with prejudice."[15] However, CrR 3.3(e)(1) expressly excludes from the 60-day calculation "[a]ll proceedings relating to the competency of a defendant to stand trial on the pending charge, beginning on the date when the competency examination is ordered and terminating when the court enters a written order finding the defendant to be competent."

Clark contends that when governmental mismanagement delays a competency examination, the court should not exclude that delay because it is

---

[12] Clark also claims the delay violated his Sixth Amendment speedy trial rights. He cites to the federal and state constitutions but provides no argument or other authority to support his claim. We therefore consider only his CrR 3.3 argument.

[13] State v. Kindsvogel, 149 Wn.2d 477, 480, 69 P.3d 870 (2003).

[14] CrR 3.3(b)(1)(i), (c)(1).

[15] CrR 3.3(h).

not a proceeding relating to his competency to stand trial. But CrR 3.3(e)(1) plainly excludes the time between the order for a competency examination and the order finding the defendant competent. Here, the excluded period began on August 19, 2014, when the trial court ordered a competency examination and ended when the court entered an order finding Clark was competent to stand trial on March 5, 2015. Thus, following CrR 3.3(e)(1), the trial court properly excluded this period from its time for trial calculation. Further, "[t]olling is necessary because neither side can go forward with trial preparation until the defendant is found competent to proceed. The court gives this particular tolling provision broad scope precisely because the evaluation process is unpredictable and beyond the court's control."[16] Regardless of any alleged mismanagement, while competency proceedings were ongoing, the time for trial was properly tolled because neither party was able to prepare for trial. The trial court correctly denied Clark's motions to dismiss for CrR 3.3 violations.

<u>Governmental Misconduct</u>

Clark also contends, relying on CrR 8.3(b), that the trial court should have dismissed his charges for governmental misconduct. An appellate court reviews a trial court's CrR 8.3 decision for abuse of discretion.[17]

> The court, in the furtherance of justice, after notice and hearing, may dismiss any criminal prosecution due to arbitrary action or governmental misconduct when there has been prejudice to the

---

[16] <u>State v. Harris</u>, 122 Wn. App. 498, 505, 94 P.3d 379 (2004).
[17] <u>State v. Michielli</u>, 132 Wn.2d 229, 240, 937 P.2d 587 (1997).

rights of the accused which materially affect the accused's right to a fair trial. The court shall set forth its reasons in a written order.[18]

A trial court may dismiss charges under CrR 8.3(b) only when the defendant shows, by a preponderance of the evidence, arbitrary action or governmental misconduct and actual prejudice affecting his right to a fair trial.[19] The "governmental misconduct need not be of an evil or dishonest nature; simple mismanagement is sufficient."[20] But "the requirement for a showing of prejudice under [CrR] 8.3(b) is not satisfied merely by expense, inconvenience, or additional delay within the speedy trial period; the misconduct must interfere with the defendant's ability to present his case."[21]

Clark asserts that he established mismanagement and prejudice under Trueblood I. But the conclusions Trueblood I draws do not show governmental misconduct prejudiced Clark's defense. Trueblood I lists a number of examples of how incarceration can prove harmful to people with serious mental illness.[22] But Trueblood I focuses on the liberty interests of pretrial detainees and does not mention any prejudice to a similarly situated defendant's ability to present a defense.[23] Thus, Trueblood I does not help Clark establish prejudice. Clark does not independently explain how governmental misconduct prejudiced his right to a fair trial or explain how he meets the test for dismissal under CrR

---

[18] CrR 8.3(b).
[19] State v. Rohrich, 149 Wn.2d 647, 654, 71 P.3d 638 (2003).
[20] State v. Blackwell, 120 Wn.2d 822, 831, 845 P.2d 1017 (1993).
[21] City of Kent v. Sandhu, 159 Wn. App. 836, 841, 247 P.3d 454 (2011) (citing State v. Chichester, 141 Wn. App. 446, 457, 170 P.3d 583 (2007)).
[22] Trueblood I, 73 F. Supp. 3d at 1316-17.
[23] Trueblood I, 73 F. Supp. 3d at 1316-17.

8.3(b). We conclude that the trial court did not abuse its discretion in denying dismissal of Clark's criminal charges based on CrR 8.3(b).

### Ineffective Assistance of Counsel

Clark claims that trial counsel provided ineffective assistance in two ways: (1) by failing to pursue a diminished capacity defense and (2) by asking a witness about prior assaults.

Claims of ineffective assistance present mixed questions of law and fact, which we review de novo.[24] We examine the entire record to decide whether the appellant received effective representation and a fair trial.[25] To succeed on his ineffective assistance claim, Clark must show that his attorney's performance fell below an objective standard of reasonableness and that this deficient performance prejudiced him.[26] We give defense counsel's performance a great deal of deference and employ a strong presumption of reasonableness.[27] The reasonableness inquiry requires the defendant to show the absence of legitimate strategic or tactical reasons for the challenged conduct.[28] Because, as explained below, Clark does not show his counsel's performance fell below an objective standard of reasonableness, his ineffective assistance claim fails.

---

[24] In re Pers. Restraint of Fleming, 142 Wn.2d 853, 865, 16 P.3d 610 (2001).

[25] State v. Hicks, 163 Wn.2d 477, 486, 181 P.3d 831 (2008) (quoting State v. Ciskie, 110 Wn.2d 263, 284, 751 P.2d 1165 (1988)).

[26] Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

[27] State v. Grier, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011).

[28] State v. McFarland, 127 Wn.2d 322, 336, 899 P.2d 1251 (1995).

*Diminished Capacity Defense*

First, we address Clark's claim that his counsel was ineffective for failing to pursue a diminished capacity defense. Diminished capacity is a mental condition that impairs the defendant's ability to form the necessary mental state to satisfy the elements of the crime charged.[29] Either specific intent or knowledge are elements of each of Clark's charges.[30] Therefore, Clark claims, a successful diminished capacity defense would have negated the mental state elements of his charged crimes.

We must first decide whether the evidence entitled Clark to a diminished capacity instruction. In order to support a diminished capacity defense, the record must include substantial evidence of a mental condition and that evidence must "logically and reasonably connect[ ] the defendant's alleged mental condition with the inability to possess the required level of culpability to commit the crime charged."[31] "It is not enough that a defendant may be diagnosed as suffering from a particular mental disorder. The diagnosis must, under the facts of the case, be capable of forensic application."[32]

While the record shows that Clark had some history of mental illness and drug use, it does not show that he did not form the required mental state. No expert testified about Clark's mental state at the time of the crime. A

---

[29] Harris, 122 Wn. App. at 506.
[30] RCW 9A.36.011 (assault); RCW 9A.46.020 (felony harassment); RCW 9A.40.040 (unlawful imprisonment).
[31] State v. Griffin, 100 Wn.2d 417, 419, 670 P.2d 265 (1983).
[32] State v. Atsbeha, 142 Wn.2d 904, 921, 16 P.3d 626 (2001).

psychological report prepared in connection with his competency evaluation mentions a history of mental health problems and drug abuse. But this report does not draw any connection to Clark's mental state when he assaulted Epps. Similarly, Epps testified that Clark had likely been using drugs that day and had a "shocked" look on his face after the attack. But her testimony does not show that Clark did not intend to act or did not know what he was doing. The record does not contain substantial evidence that a mental condition prevented him from forming a culpable mental state. He is, therefore, not entitled to a diminished capacity instruction.

We distinguish the cases Clark relies on. In State v. Thomas[33] and State v. Tilton,[34] the defendants had introduced evidence that alcohol or drug use had caused them to black out when the crime had taken place. Clark, by contrast, presents no similar evidence to show how any mental illness or drug use affected his mind at the time of the crime.

While evidence exists to show that Clark suffered from some mental illness and used drugs, he does not present any evidence that illness or drug use prevented him from being able to form the required mental state. Therefore, Clark does not show he was entitled to a diminished capacity defense, he fails to

---

[33] 109 Wn.2d 222, 225, 743 P.2d 816 (1987).
[34] 149 Wn.2d 775, 784-85, 72 P.3d 735 (2003). Tilton is also procedurally distinguishable. Due to an incomplete record, the court was unable to decide whether the defendant was entitled to the defense and, therefore, ordered a new trial. Tilton, 149 Wn.2d at 785.

meet the first prong of <u>Strickland v. Washington</u>,[35] and we conclude that his counsel was not ineffective for failing to pursue the diminished capacity defense.

*Prior Assaults*

Next, we consider Clark's claim that his attorney was ineffective for asking Epps about allegations of prior assaults. Clark claims that "no conceivable legitimate tactic" justified introducing testimony that he claims is highly prejudicial.[36] But as the record shows, defense counsel's questions about the prior incidents were part of a strategy to challenge the admissibility of the incident under ER 404(b).

Before trial, defense counsel and the trial court had the following exchange about the admissibility of the incidents:

> [DEFENSE COUNSEL]: . . . I think that maybe you should hear her testimony and treat the testimony as an offer of proof simultaneous since we don't have a jury here, because the first thing you have to decide before admissibility is whether or not, by preponderance, the prior acts occurred, and then whether or not it's more probative than prejudicial. But—and the reason I'm raising that is because there was an incident in June of 2014 where the police got called but the reports that I've been given of the incident say that she told police at that time that nothing had happened, and so I'd prefer the Court wait on that ruling, allow her to testify, knowing I'm objecting, until you've heard the testimony, and then—
>
> THE COURT: I'll continue to reserve.
>
> [DEFENSE COUNSEL]: —essentially have an offer of proof.
>
> THE COURT: I'll continue to reserve under that framework.

---

[35] 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).
[36] <u>Grier</u>, 171 Wn.2d at 33.

At trial, defense counsel questioned Epps about her statement to the police regarding an alleged assault.

> Q. Do you remember telling the police that nothing had happened?
>
> A. I do.
>
> Q. Is that true?
>
> A. No.
>
> Q. Wasn't true?
>
> A. No.

The case proceeded as a bench trial, and the court heard Epps's testimony as substantive evidence and, at the same time, as an offer of proof. The court had agreed to consider Epps's testimony in this manner and could distinguish between the two purposes for which it was offered. As the record shows, defense counsel thought Epps's testimony about the prior assaults was likely to lead to a favorable ruling on their admissibility. Because defense counsel had a tactical reason for questioning the witness about prior assaults, he was not ineffective for doing so.

## LFOs

Clark asserts that the trial court should not have imposed LFOs after determining that he could not pay. The State contends that Clark waived the issue on appeal when he failed to object to the imposition of LFOs by the trial

court. "Unpreserved LFO errors do not command review as a matter of right."[37] But under RAP 2.5(a), we exercise our discretion to consider the issue.[38]

The trial court imposed only mandatory fees, the $500 crime victim penalty assessment, the $200 criminal filing fee, and the $100 DNA testing fee.[39] Based on Clark's declaration of indigency, the court declined to impose additional, nonmandatory LFOs. In general, mandatory LFOs must be imposed regardless of the defendant's ability to pay.[40] However, "RCW 9.94A.777(1) requires that a trial court determine whether a defendant who suffers from a mental health condition has the ability to pay any LFOs, mandatory or discretionary."[41] RCW 9.94A.777(1) states that "[b]efore imposing any legal financial obligations upon a defendant who suffers from a mental health condition, other than restitution or the victim penalty assessment under RCW 7.68.035, a judge must first determine that the defendant . . . has the means to pay such additional sums." (Emphasis added.)

The State concedes, and we agree, that remand is appropriate because the trial court did not consider Clark's current ability to pay mandatory fees. We remand for consideration only of Clark's ability to pay the criminal filing fee and the DNA testing fee.

---

[37] State v. Blazina, 182 Wn.2d 827, 833, 344 P.3d 680 (2015).

[38] See Blazina, 182 Wn.2d at 834.

[39] RCW 7.68.035(1)(a) (victim assessment); RCW 36.18.020(2)(h) (filing fee); RCW 43.43.7541 (DNA testing fee); State v. Lundy, 176 Wn. App. 96, 102-03, 308 P.3d 755 (2013).

[40] Lundy, 176 Wn. App. at 102-03.

[41] State v. Tedder, 194 Wn. App. 753, 756, 378 P.3d 246 (2016).

## CONCLUSION

Clark does not show that dismissal of charges is the proper remedy for the substantive due process violation he alleges. We decline to vacate his convictions on that basis. As for his speedy trial claim, under the plain language of CrR 3.3, Clark was timely brought to trial. Clark's claim under CrR 8.3(b) also fails because he does not show that any governmental misconduct prejudiced his case. Finally, Clark fails to show that his counsel was not effective. For these reasons, we affirm Clark's conviction.

We find, however, that the trial court should have considered Clark's ability to pay the criminal filing fee and the DNA testing fee. We remand the case for consideration of Clark's ability to pay those LFOs.

_Leach, J._

WE CONCUR:

_Spearman, J._                _Appelwick, J._