# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 48481-1-II |
| Respondent, | consolidated with<br>No. 48491-9-II |
| v. | PUBLISHED OPINION |
| ANTHONY GENE HAND, | |
| Appellant. | |

MAXA, A.C.J. – Anthony Gene Hand appeals his convictions of first degree escape and unlawful possession of a controlled substance. The trial court initially found Hand incompetent to stand trial and ordered that Hand be committed to Western State Hospital (WSH) within 15 days for treatment to restore his competency. However, Hand remained in jail for 61 days after the court's deadline before being admitted to WSH. He then received restorative treatment and eventually regained competency. He subsequently was convicted of both charges in a bench trial on stipulated facts.

Hand argues that (1) the excessive time he spent in jail waiting to receive restorative treatment violated his substantive due process rights, (2) the violation of his substantive due process rights constituted government misconduct that required the trial court to dismiss the charges against him under CrR 8.3(b), and (3) the violation of his substantive due process rights

required the trial court to dismiss the charges against him even apart from CrR 8.3(b). Hand also submitted a statement of additional grounds (SAG) alleging ineffective assistance of counsel.

We hold that although WSH's delay in admitting Hand for competency restoration treatment violated his substantive due process rights, dismissal was not required under CrR 8.3(b) because Hand cannot show that the delay in receiving restorative treatment prejudiced his right to a fair trial, and dismissal was not required for the due process violation apart from CrR 8.3(b). We also hold that Hand's SAG claims are too vague to consider.

Accordingly, we affirm the trial court's denial of Hand's motion to dismiss, and we affirm his convictions.

## FACTS

In September 2014, the State charged Hand with first degree escape. Hand was arrested pursuant to an arrest warrant on October 1. At the time of his booking, police found a baggie of methamphetamine in his waistband. The State then charged Hand with unlawful possession of a controlled substance.

The trial court set Hand's bail at $30,000 for the first degree escape charge and at $20,000 for the unlawful possession of a controlled substance charge. Hand did not post bail and therefore remained confined in the county jail.

On December 11, defense counsel requested a competency evaluation for Hand under RCW 10.77.060. The trial court granted the request and ordered that Hand be held in custody without bail pending the competency determination.

An evaluation report dated December 18 concluded that Hand's symptoms interfered with his ability to communicate with his attorney and meaningfully assist in preparing his

defense. Based on this report, the trial court on December 24 entered an order that Hand be committed to WSH for a maximum of 45 days to undergo evaluation and treatment to restore competency to proceed to trial. The order included instructions that "Western State Hospital shall admit Mr. Hand within 15 days of this order per Trueblood v. DSHS." Clerk's Papers (CP) at 32.

Hand drafted a letter to the trial court dated January 19, 2015, 11 days after the court's commitment deadline. He pointed out that he was still in jail despite the deadline and suggested that his charges should be dismissed because of a due process violation or that the case be transferred to mental health court.

On February 11, 34 days after the trial court's commitment deadline, Hand filed a motion to dismiss based on the violation of his substantive due process rights. The motion also sought, in the alternative, an order for WSH to show cause why it should not be held in contempt of the trial court's order. The court denied the motion to dismiss without prejudice. But the court ordered a show cause hearing for WSH to appear and show cause why it should not be held in contempt.

In opposition to Hand's motion for contempt sanctions, WSH submitted a lengthy declaration from Dr. Barry Ward, the psychology services supervisor at WSH. Ward stated that when WSH received the trial court's commitment order, Hand was placed on a waiting list for admission because WSH did not have the ability to admit him for restorative treatment. He further stated that the unit handling restoration treatment services had been operating at near 100 percent occupancy for several years, and the current waiting list had approximately 113 defendants. The average waiting time for 45-day restoration cases was 71 days. Ward

emphasized that the delay for forensic admissions was due to factors beyond WSH's control, including a significant increase in orders for inpatient evaluation or restoration and a decrease in the number of available beds.

On February 18, Hand filed a new motion to dismiss that was substantially similar to his previous motion. And on February 25, Hand filed another motion to dismiss or in the alternative to release him from custody. That motion was substantially similar to his February 18 motion to dismiss, but added an alternative request that the trial court consider releasing Hand from custody so he could obtain his own treatment.

At the show cause hearing on February 25, the trial court found the Department of Social and Health Services (DSHS)[1] in contempt of the court's December 24, 2014 order, imposed sanctions of $500 per day starting on February 26 to be paid to the county jail, and ordered that Hand be transported to WSH by February 26. Hand was not transferred to WSH by February 26.

On March 4, the trial court heard arguments on the February 25 motion to dismiss or alternatively to release from custody. The court ruled that there was no due process violation and denied the motion to dismiss or to release from custody.

WSH finally admitted Hand on March 10, 61 days after the 15-day deadline in the trial court's original commitment order. The trial court subsequently ordered DSHS to pay the county jail $6,000 in sanctions ($500 per day for 12 days) for the delay in admitting Hand to WSH following the court's February 25 contempt order.

WSH submitted a forensic mental health report regarding Hand to the trial court on April 28. The report stated that Hand was able to understand the nature of the proceedings against him

---

[1] DSHS is the agency responsible for WSH.

and could assist in his defense with a reasonable degree of rational understanding. On April 29, the trial court found Hand competent to stand trial.

On November 20, a bench trial was held on stipulated facts. The trial court found Hand guilty of first degree escape and unlawful possession of a controlled substance.

Hand appeals his convictions.

ANALYSIS

A.  COMMITMENT FOR COMPETENCY RESTORATION TREATMENT

Under RCW 10.77.050, "[n]o incompetent person shall be tried, convicted, or sentenced for the commission of an offense so long as such incapacity continues." A person is incompetent if he or she "lacks the capacity to understand the nature of the proceedings against him or her or to assist in his or her own defense as a result of mental disease or defect." RCW 10.77.010(15).[2]

Whenever there is reason to doubt a defendant's competency, the trial court shall order an evaluation and report of the defendant's mental condition. RCW 10.77.060. If based on the report the court finds that the defendant is not competent, the court shall stay the proceedings against the defendant. Former RCW 10.77.084(1)(a) (2012). The court then shall commit the defendant to the custody of the secretary of DSHS, who shall place the defendant in treatment for competency restoration. Former RCW 10.77.086 (2013). The maximum commitment period for restorative treatment is 45 days for a defendant whose highest charge is a class C felony or nonviolent class B felony. Former RCW 10.77.086(1)(b).

---

[2] RCW 10.77.010 has been amended since the events of this case transpired. However, these amendments do not impact the statutory language relied on by this court. Accordingly, we do not include the word "former" before RCW 10.77.010.

If at or before the end of the ordered term of commitment for restorative treatment the defendant regains competency, the trial court shall lift the stay and continue the criminal proceedings. Former RCW 10.77.084(1)(b). If competency has not been restored and the court finds that the defendant is not likely to regain competency, then the court shall dismiss the criminal proceedings without prejudice. Former RCW 10.77.084(1)(c).

The legislature established "performance targets and maximum time limits for the timeliness" of competency evaluations and admissions for restorative treatment. Former RCW 10.77.068(1)(a) (2012). The legislature assigned a performance target of seven days or less for extending an offer of admission to a defendant in pretrial custody awaiting authorized restorative treatment. Former RCW 10.77.068(1)(a)(i)(A). But the legislature also recognized that the performance targets would not always be achievable and explicitly provided that the performance targets do not "create any new entitlement or cause of action related to the timeliness of competency evaluations or admission for inpatient restoration services related to competency to proceed or stand trial, nor can it form the basis for . . . a motion to dismiss criminal charges." Former RCW 10.77.068(1)(a), (5).

B.     DISMISSAL BASED ON SUBSTANTIVE DUE PROCESS VIOLATION

Hand argues that he had a substantive due process right to restorative treatment that was violated by the delay in receiving treatment while he remained in custody, and that dismissal was the appropriate remedy.[3] We agree that Hand's substantive due process rights were violated, but

---

[3] The State initially argues that Hand's arguments are more correctly characterized as speedy trial complaints that should be raised under the Sixth Amendment to the United States Constitution. However, Hand emphasizes in his reply brief that he did not intend to raise a speedy trial claim and notes that the due process clause of the Fourteenth Amendment is the proper authority for the issue of delayed competency services.

we hold that dismissal of the charges against him was not an appropriate remedy for that violation.

    1.    Due Process Violation

The due process clause of the Fourteenth Amendment to the United States Constitution governs issues regarding pretrial detention of defendants who have been evaluated and found incompetent, but are awaiting competency restoration treatment. *Trueblood v. Wash. State Dep't of Social & Health Servs.* (*Trueblood* III), 822 F.3d 1037, 1042-43 (9th Cir. 2016). Because incompetent criminal defendants have not been convicted of the charged crimes, they have liberty interests in freedom from incarceration and in receiving restorative treatment. *Or. Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1121 (9th Cir. 2003). To determine whether the substantive due process rights of an incompetent criminal defendant have been violated, we must balance these liberty interests against the legitimate interests of the State. *Id.*; *see also Trueblood* III, 822 F.3d at 1043.

In *Mink*, the Ninth Circuit held that the Oregon State Hospital – the equivalent of WSH – "violates the substantive due process rights of incapacitated criminal defendants when it refuses to admit them in a timely manner."[4] 322 F.3d at 1121-22. The court stated that "[h]olding incapacitated criminal defendants in jail for weeks or months violates their due process rights because the nature and duration of their incarceration bear no reasonable relation to the evaluative and restorative purposes for which courts commit those individuals." *Id.* at 1122. In

---

[4] Under Oregon law a criminal defendant is incapacitated if as a result of mental disease or defect, the defendant is unable to understand the nature of the proceedings, or assist and cooperate with defense counsel, or participate in the defense. 322 F.3d at 1105 & n.1. Accordingly, the term "incapacitated" has an equivalent meaning to "incompetent."

applying the balancing test, the court in *Mink* stated that there was no "legitimate state interest in keeping mentally incapacitated criminal defendants locked up in county jails for weeks or months" and that the delay in giving restorative treatment "undermines the state's fundamental interest in bringing the accused to trial." *Id.* at 1121.

Relying on *Mink*, a Washington federal district court ruled that DSHS, WSH, and Eastern State Hospital violated the substantive due process rights of incompetent criminal defendants by not providing timely court-ordered competency restoration services. *Trueblood v. Wash. State Dep't of Soc. & Health Servs.* (*Trueblood* I), 73 F. Supp. 3d 1311, 1315-17 (W.D. Wash. 2014). The court concluded that the criminal defendants' liberty interests outweighed countervailing state interests. *Id.* at 1317. The same court subsequently found that, absent an individualized finding of good cause, seven days was the maximum justifiable period of incarceration for criminal defendants waiting for in-jail competency evaluations and competency restoration services. *Trueblood v. Wash. State Dep't of Social & Health Servs.* (*Trueblood* II), 101 F. Supp. 3d 1010, 1022-23 (W.D. Wash. 2015), *rev'd in part*, 822 F.3d 1037 (9th Cir. 2016).[5]

More recently, another Washington federal district court ruled for purposes of an immunity defense in a 42 U.S.C. § 1983 damages action that it was "clearly established" that "indefinitely incarcerating incompetent defendants while they awaited competency restoration, because there was not room in the state hospital, violated their constitutional due process rights."

---

[5] The State appealed only the seven day limit for in-jail competency evaluations, not the limit for competency restoration services. *Trueblood* III, 822 F.3d at 1040. The Ninth Circuit reversed the seven day mandate for competency evaluations. *Id.* at 1046. *See generally State v. Kidder*, 197 Wn. App. 292, 307 & n.7, 389 P.3d 664 (2016).

*Willis v. Wash. State Dep't of Soc. & Health Servs.*, No. C16-5113, 2017 WL 1064390, at *6 (W.D. Wash. Mar. 21, 2017) (court order).

Significantly, these cases recognize that the liberty interests of incompetent criminal defendants are not limited to their confinement. The court in *Mink* stated that in addition to their liberty interest in freedom from incarceration, incompetent criminal defendants "also have a liberty interest in receiving restorative treatment." 322 F.3d at 1121. The district court in *Trueblood* I quoted the same language. 73 F. Supp. 3d at 1314.

We agree with the reasoning in these federal cases. Accordingly, we hold that (1) an incompetent criminal defendant has liberty interests in freedom from incarceration and in receiving restorative treatment, and (2) DSHS and WSH violate an incompetent criminal defendant's substantive due process rights by unreasonably delaying court-ordered restorative treatment while the defendant remains in custody.[6]

The State argues that the *Mink* analysis is inapplicable here because Hand was not confined solely because of his incompetency; he was confined because he could not post the bail established by the trial court. The State argues that this fact changes the balancing analysis because Hand's liberty interest in freedom from incarceration was not affected by the delay in his transfer to WSH – he would have been confined anyway. And the State argues that it had a strong interest in confining Hand apart from his incompetency.

---

[6] We do not address the extent to which an unreasonable delay in court-ordered restorative treatment violates the defendant's substantive due process rights if the defendant is not in custody.

But the State fails to recognize, as we hold above, that an incompetent criminal defendant also has a liberty interest in receiving restorative treatment. The State's argument does not address that liberty interest.

We hold that WSH's 61-day delay in admitting Hand for competency restoration treatment was unreasonable and violated his substantive due process rights.

2. Dismissal Under CrR 8.3(b)

Hand argues that WSH's delay in providing him with competency restoration treatment in violation of his substantive due process rights required the trial court to dismiss the charges against him under CrR 8.3(b). We disagree.

a. Legal Principles

CrR 8.3(b) states that the trial court "may dismiss any criminal prosecution due to arbitrary action or governmental misconduct when there has been prejudice to the rights of the accused which materially affect the accused's right to a fair trial." Dismissal is appropriate under CrR 8.3(b) if the defendant shows by a preponderance of the evidence (1) arbitrary action or governmental misconduct and (2) prejudice affecting the defendant's right to a fair trial. *State v. Kone*, 165 Wn. App. 420, 432-33, 266 P.3d 916 (2011). The government's misconduct does not need to be evil or dishonest in order to meet the first element – simple mismanagement can be sufficient. *Id.* at 433. To meet the second element, the defendant must show actual prejudice, rather than speculative prejudice, that affected his right to a fair trial. *Id.*

But dismissal under CrR 8.3(b) is an extraordinary remedy, and should be limited to egregious cases of mismanagement or misconduct. *State v. Wilson*, 149 Wn.2d 1, 9, 65 P.3d 657 (2003). The trial court should order dismissal under CrR 8.3(b) only as a last resort. *Id.* at 12.

We review a trial court's decision on a CrR 8.3(b) motion to dismiss for an abuse of discretion. *Kone*, 165 Wn. App. at 433. A trial court abuses its discretion when its decision is manifestly unreasonable, based on untenable grounds, or made for untenable reasons. *Id.*

b. Governmental Misconduct

Hand argues that the first element of CrR 8.3(b) is met here because the State violated his substantive due process rights by delaying his restorative treatment. The State argues that (1) CrR 8.3(b) applies only to the conduct of law enforcement, the prosecutor, or the trial court and not to an independent government entity like WSH; and (2) WSH's delay in admitting Hand for competency restoration treatment due to factors beyond its control did not constitute the type of misconduct warranting dismissal under CrR 8.3(b). We decline to address these issues in light of our holding below that Hand cannot show the necessary prejudice to invoke CrR 8.3.

c. Prejudice Affecting Right to a Fair Trial

Hand argues that he suffered irreparable injury when he was confined to jail while waiting for competency restoration treatment. But CrR 8.3(b) requires that the misconduct "materially affect the accused's right to a fair trial." Hand does not explain how the two month delay in receiving treatment had any effect on the fairness of his trial.

Accordingly, we hold that the trial court did not err by denying dismissal under CrR 8.3(b).[7]

---

[7] Hand also claims for the first time on appeal and only in his reply brief that dismissal was required under former RCW 10.77.084(1)(b). He relies on *State v. Kidder*, where the appellate court affirmed a trial court's dismissal of criminal charges based on former RCW 10.77.084(1)(b) and (c) when the defendant did not receive competency restoration treatment before expiration of the 90-day commitment period. 197 Wn. App. 292, 315-17, 389 P.3d 664 (2016). However, we do not consider that argument because it was not raised in the trial court. RAP 2.5(a). And it was not raised in the opening brief. *Cowiche Canyon Conservancy v.*

11

3. Dismissal for Constitutional Violation

Hand appears to argue that dismissal of the charges against him is an appropriate remedy for the due process violation even apart from CrR 8.3(b). However, he does not cite any authority to support this argument. In *Trueblood* III and *Mink*, the criminal defendants sought and received injunctive relief, not dismissal, to remedy the delay in receiving competency services. *Trueblood* III, 822 F.3d at 1046; *Mink*, 322 F.3d at 1123. *Willis* involved a claim for damages under 42 U.S.C. § 1983. 2017 WL 1064390, at *2.

A trial court can dismiss a criminal action when the conduct of law enforcement officers is "so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction." *United States v. Russell*, 411 U.S. 423, 431-32, 93 S. Ct. 1637, 36 L. Ed. 2d 366 (1973); *see also State v. Lively*, 130 Wn.2d 1, 19-22, 921 P.2d 1035 (1996); *State v. Markwart*, 182 Wn. App. 335, 348-50, 329 P.3d 108 (2014). Such conduct must "shock the universal sense of fairness" and dismissal based on outrageous conduct must be "reserved for only the most egregious circumstances." *Lively*, 130 Wn.2d at 19, 20.

However, dismissal based on outrageous conduct seems to be limited to the acts of law enforcement officers and informants. *Id.* at 19; *Markwart*, 182 Wn. App. at 348-49. And Hand cannot show that WSH's conduct in delaying his admittance because there were no available beds is so shocking or outrageous that due process principles require dismissal.

---

*Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) ("An issue raised and argued for the first time in a reply brief is too late to warrant consideration.").

In the absence of any applicable authority, we reject Hand's argument that the violation of his substantive due process rights regarding his detention awaiting competency restoration treatment requires dismissal of the charges against him.

C.      SAG CLAIMS

Hand asserts in a SAG that he received ineffective assistance of counsel in the trial court. We do not review these claims because they are impermissibly vague.

Hand states that his assigned defense counsel at trial did not provide adequate representation and was not ethically committed to present and defend Hand's rights. However, Hand does not explain how his defense counsel was ineffective. He does not complain of specific actions taken by defense counsel or argue that defense counsel should have done something differently. Although RAP 10.10(c) does not require that a SAG refer to the record or cite authority, the rule does require an appellant to inform this court of the "nature and occurrence of the alleged errors." We cannot review a SAG claim if it is too vague to properly inform us of the claimed error. *State v. Bluehorse*, 159 Wn. App. 410, 436, 248 P.3d 537 (2011). This rule applies here.

Hand also attached four emails/letters to his SAG as exhibits and stated that those exhibits contain other additional grounds not raised by appellate counsel. However, the emails/letters were provided as exhibits, not additional grounds. And they do not contain argument or a clear statement of any alleged error. We do not make arguments for the parties. *In re Pers. Restraint of Coats*, 173 Wn.2d 123, 138, 267 P.3d 324 (2011).

Accordingly, we cannot consider Hand's SAG claims or any other additional grounds contained in the attached exhibits.

D.    APPELLATE COSTS

Hand requests that we refrain from imposing appellate costs if the State is the prevailing party.  We decline to address this issue.  A commissioner of this court will determine whether to award appellate costs under RAP 14.2 if the State files a cost bill and if Hand objects to that cost bill.

CONCLUSION

We affirm the trial court's denial of Hand's motion to dismiss, and we affirm Hand's convictions.

_____
MAXA, A.C.J.


We concur:


_____
LEE, J.

_____
SUTTON, J.