IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 78334-3-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| DAVID LEE CLARK, | ) | |
| | ) | |
| Appellant. | ) | FILED: November 18, 2019 |
| | ) | |

ANDRUS, J. — David Lee Clark appeals his conviction for first degree child molestation. He argues that prosecutorial error in closing statements denied him his constitutional right to a fair trial. He also challenges the constitutionality of one community custody condition. We conclude that the prosecutor's statements were neither improper nor prejudicial; thus, Clark received a fair trial. We also conclude that condition 18 is not unconstitutionally vague because it does not encourage arbitrary enforcement and because an ordinary person can understand its prohibitions. We thus affirm Clark's conviction.

## FACTS

In June 2017, the State charged David Clark with one count of first degree child molestation for acts occurring between September 1, 2016 and November 5, 2016. The charge was based on seven-year-old T.D.'s statements to a teacher, law enforcement, and a forensic interviewer that her mother's boyfriend, Clark, had

molested and taken inappropriate photographs of her over a three day period in November 2016.

Throughout the trial, the key issue was T.D.'s credibility in light of an absence of any physical corroboration of the events and law enforcement's inability to find any photographs of T.D. in Clark's possession. In its closing argument, the State, anticipating an attack on T.D.'s testimony and her failure to immediately tell any adult about the alleged molestation, argued:

> Next topic is, what does a sexual assault victim look like. And the fact is there's no clear answer to this. During voir dire, we discussed your personal experiences with these types of crime[s] and experiences of sexual assault victims that you know.
>
> And not one of these people acted in the same way. The consensus among everyone was that sexual assault survivors don't behave in the same way. Some people have outbursts right away and you can tell that they experienced something traumatic. Some people took that pain and stuffed it down.
>
> Only until years and years later did it come out. Some people took that hurt and focused it into other parts of their lives. . . .
>
> You cannot expect [T.D.] to act in any particular way. She's responding to surviving the sexual assault in a manner that works for her at this moment in her life.

In his closing, Clark did seek to discredit T.D. based on inconsistencies between her recollection of events during her interview with Alyssa Layne, a child interview specialist for the King Prosecuting Attorney's Office, and her trial testimony. Clark argued that T.D. testified about one incident of molestation, which she claimed occurred at 4:00 in the morning, and that immediately after the incident, she went upstairs and fell asleep. Clark argued that her conduct did not support her contention of being traumatized by the molestation:

But [T.D.] testified she was awake at 4:00 in the morning because she can't sleep well. And keep in mind this is a pretty major thing that happened. She says she felt nasty. For most people, that would be a difficult thing to just fall asleep, but now she went upstairs and she just fell asleep. She didn't stay up wondering should I tell anyone, who should I tell, how would I tell them, should I try to clean myself, what if I wake people up, do I want to wake people up. She just fell asleep.

On rebuttal, the prosecutor responded to the suggestion that T.D.'s conduct undermined her testimony:

[Clark's counsel] tells you that it's odd that, after the Defendant [molested T.D.], what she did is just go down and go back to sleep. That is a traumatic experience. So why would she just go back to sleep? And again, we've talked about this. We don't get to judge what sexual assault victims do and how they process it. As a way of analogy, it'd be like shaming a rape victim that takes a shower afterward.

Clark objected to the statements; the trial court overruled the objection.

After the jury had been excused to the deliberation room, Clark moved for a mistrial, claiming that the prosecutor's rape victim analogy shifted the burden of proof to Clark to prove that molestation had not occurred. The prosecutor argued that the trial court correctly overruled the objection because he was responding to Clark's argument that T.D.'s conduct in having gone to bed after being molested was suspicious. The trial court denied Clark's motion for a mistrial, noting that it did not notice any improper burden shifting during the State's rebuttal closing statements and that the rape victim analogy was made in response to Clark's arguments regarding T.D.'s credibility.

The jury found Clark guilty of first degree child molestation. The trial court sentenced Clark to an indeterminate sentence of 60 months in prison with a

maximum term of life. It also imposed standard community custody conditions for sex offenders and identified three additional crime-related prohibitions:

16. [x] Have no direct and/or indirect contact with minors.

17. [x] Do not hold any position of authority or trust involving minors.

18. [x] Stay out of areas where children's activities regularly occur or are occurring. This includes parks used for youth activities, schools, daycare facilities, playgrounds, wading pools, swimming pools being used for youth activities, play areas (indoor or outdoor), sports fields being used for youth sports, arcades, and any specific location identified in advance by DOC or CCO.

Clark appeals. First, he argues that the prosecutor's rape victim analogy in the State's rebuttal closing deprived him of his constitutional right to a fair trial. He contends that the trial court erred in overruling Clark's timely objection to the statement and in denying the motion for a mistrial. Second, he argues that the trial court erred in imposing community custody condition 18, which prohibits him from entering areas where children's activities regularly occur.[1]

ANALYSIS

1. Prosecutorial Error

Clark argues that the prosecutor committed an error when he said: "We don't get to judge what sexual assault victims do and how they process it. As a way of analogy, it'd be like shaming a rape victim that takes a shower afterwards." He contends that comparing the defense arguments about T.D.'s credibility to

---

[1] Clark also filed a pro se Statement of Additional Grounds (SAG), alleging numerous ineffective assistance of counsel claims. But he does not explain how his counsel was ineffective, and he fails to describe any of his other claims with sufficient clarity for this court to understand. RAP 10.10(c) does not require an appellant to reference the record or cite to authorities, but we will not consider an appellant's SAG "if it does not inform the court of the nature and occurrence of alleged errors." RAP 10.10(c); State v. Hand, 199 Wn. App. 887, 901, 401 P.3d 367 (2017). We thus decline to review any of Clark's SAG claims.

shaming a rape victim for showering after being assaulted (1) misstated the role of the jury, (2) improperly impugned defense counsel, and (3) impermissibly appealed to the jury's passions, prejudices, and sympathy by expressing his personal opinion. We disagree.

"A prosecutor must enforce the law by prosecuting those who have violated the peace and dignity of the state by breaking the law." State v. Walker, 182 Wn.2d 463, 476, 341 P.3d 976 (2015) (quoting State v. Monday, 171 Wn.2d 667, 676, 257 P.3d 551 (2011)). "[A] prosecutor [is afforded] wide latitude to argue reasonable inferences from the evidence, . . . [but he] should not use arguments calculated to inflame the passions or prejudices of the jury." In re Glasmann, 175 Wn.2d 696, 704, 286 P.3d 673 (2012). To prevail on a claim of prosecutorial error during trial, a defendant must show that the prosecutor's conduct was both improper and prejudicial in the context of the record and all of the circumstances of the trial. Id. When defense counsel makes a timely objection to a prosecutor's statements, prejudice exists when there is a substantial likelihood that the misconduct affected the jury verdict. Id.

In reviewing claims of prosecutorial error, we do not look to whether there was sufficient evidence to convict the defendant. Id. at 711. Instead, the issue is "whether the comments deliberately appealed to the jury's passion and prejudice and encouraged the jury to base the verdict on the improper argument rather than properly admitted evidence." Id. (internal quotation marks omitted) (quoting State v. Furman, 122 Wn.2d 440, 468-69, 858 P.2d 1092 (1993)). Moreover, a prosecutor's statements "even if they are improper, are not grounds for reversal if they were invited or provoked by defense counsel and are in reply to his or her

- 5 -

acts and statements, unless the remarks are not a pertinent reply or are so prejudicial that a curative instruction would be ineffective." State v. Russell, 125 Wn.2d 24, 86, 882 P.2d 747 (1994).

Clark first argues that the prosecutor misstated the jury's role during rebuttal closing by telling the jury that it could not "judge" T.D. for failing to immediately report the assault. He contends that this statement suggested that the jury was not permitted to consider the inconsistencies in T.D.'s testimony when assessing her credibility. But the prosecutor's argument was a pertinent reply to Clark's closing argument.

Clark sought to discredit T.D. throughout trial and during his closing argument. Clark questioned T.D.'s chronology of events, T.D.'s recounting of the outfits she wore at different times, and T.D.'s failure to tell Layne about a particularly heinous act of molestation until heavily prompted to do so. Clark argued that the fact that T.D. was able to return to her room and sleep after the molestation showed that she had lied about the sexual abuse. Clark implied that a child who had just been molested would not be able to sleep and would likely tell someone about the assault.

The prosecutor, in direct response to this argument, used the rape victim analogy to put T.D.'s conduct into context. He pointed out that the jury should not conclude T.D. was lying merely from the way in which she reacted to the traumatic events. The prosecutor asked the jury to instead evaluate T.D.'s credibility by determining who was in the best position to testify accurately about what happened to her, to evaluate why a young child's story may differ from one telling to the next when asked different questions by different interviewers, to consider the level of

- 6 -

detail T.D. was able to provide when describing her different encounters with Clark, and to put weight on T.D.'s demeanor while testifying. The prosecutor did not tell the jury that it could not consider T.D.'s actions after the rape; the prosecutor merely argued that there were better methods of analyzing her credibility.

Clark next asserts that the prosecutor's comment about rape victims impugned Clark's counsel by challenging her characterization of T.D.'s conduct as odd. While prosecutors may argue that the evidence does not support the defense's theory, they may not "impugn the role or integrity of defense counsel." State v. Lindsay, 180 Wn.2d 423, 431-32, 326 P.3d 125 (2014). Such statements "can severely damage an accused's opportunity to present his or her case and are therefore impermissible." Id. at 432.

Clark analogizes the prosecutor's statement to those made by the prosecutor in State v. Thorgerson, 172 Wn.2d 438, 258 P.3d 43 (2011). There, the prosecutor called the defense's case "bogus" and involving a "sleight of hand." Id. at 451-52. The Thorgerson court concluded that the statements were improper and ill-intentioned because they disparaged defense counsel, suggesting deceptive conduct on counsel's part, rather than focused on the evidence before the jury. Id. at 452. There was nothing the prosecutor said here that was in any way analogous to the comments in Thorgerson. The prosecutor did not disparage defense counsel; the focus was on T.D. and how to assess her credibility.

Clark also analogizes the prosecutor's statements to those deemed to impugn the defense in Lindsay, where the prosecutor said, in reference to defense counsel's closing statements: "This is a crock. What you've been pitched for the last four hours is a crock." 180 Wn.2d at 433. The Lindsay court concluded that

the prosecutor's comments implied deception and dishonesty. Id. And the phrase "crock" was commonly understood to be the shortened version of a particularly vulgar phrase. Id. at 433-34. Again, there was no similar statement in this case. The prosecutor did not suggest that defense counsel was deceptive or dishonest.

Clark contends, however, that the prosecutor compared defense counsel's argument to shaming a rape victim. But Clark is mischaracterizing the argument. In context, it is clear the prosecutor sought to convince the jury that victims of sexual crimes process their traumas differently, and T.D.'s ability to sleep after being sexually assaulted was no different than a rape victim failing to preserve evidence after being sexually assaulted. The prosecutor did not argue that defense counsel suggested that T.D. was to blame for what she endured. The record simply does not support Clark's argument that the prosecutor impugned defense counsel in challenging T.D.'s credibility.

Finally, Clark asserts that through the rape victim analogy, the prosecutor expressed his personal opinion that T.D. was credible and appealed to the jurors' passions and prejudices in doing so. "[I]t is impermissible for a prosecutor to express a personal opinion as to the credibility of a witness or the guilt of the defendant." Matter of Lui, 188 Wn.2d 525, 560-61, 397 P.3d 90 (2017). But "there is a distinction between the individual opinion of the prosecuting attorney, as an independent fact, and an opinion based upon or deduced from the testimony in the case." Id. at 561 (internal quotation marks omitted) (quoting State v. McKenzie, 157 Wn.2d 44, 53-54, 134 P.3d 221 (2006)). "Prejudicial error does not occur until such time as it is clear and unmistakable that counsel is not arguing an inference

from the evidence, but is expressing a personal opinion." Id. (quoting McKenzie, 157 Wn.2d at 53-54).

Because Clark made T.D.'s credibility the focus of his defense, the prosecutor understandably responded to that defense. The prosecutor did not state that he believed T.D. was telling the truth. The prosecutor merely argued how the jury should evaluate Clark's credibility arguments. The record supports the conclusion that the prosecutor used the rape victim analogy to argue that T.D.'s personal response to being molested did not make her more or less credible. It was not an expression of the prosecutor's personal opinion as to T.D.'s credibility.

Furthermore, even if the statement had been improper bolstering testimony, the jury instructions clearly informed the jurors that: "You are the sole judges of the credibility of each witness. You are also the sole judges of the value or weight to be given to the testimony of each witness." Jurors are presumed to follow their instructions. State v. Emery, 174 Wn.2d 741, 754, 278 P.3d 653 (2012). We cannot conclude that this single statement made in rebuttal caused any prejudice to Clark.

We conclude that the prosecutor's statement was neither improper nor prejudicial. Because the statement was proper, the trial court did not abuse its discretion in overruling the objection or in denying Clark's motion for a new trial.

2. Condition 18

Clark next challenges community custody condition 18, which states:

Stay out of areas where children's activities regularly occur or are occurring. This includes parks used for youth activities, schools, daycare facilities, playgrounds, wading pools, swimming pools being used for youth activities, play areas (indoor or outdoor), sports fields

being used for youth sports, arcades, and any specific location identified in advance by DOC or CCO.

Clark claims that condition 18 is unconstitutionally vague for three reasons: (1) it fails to define "area" and "regularly occur;" (2) it refers to "children" and "youth" without establishing that the terms are synonymous; and (3) it permits arbitrary enforcement because it gives the Community Corrections Officer (CCO) unfettered discretion to determine the scope of the ban. We disagree and conclude that condition 18 is not unconstitutionally vague.

"Conditions of community custody may be challenged for the first time on appeal and, where the challenge involves a legal question that can be resolved on the existing record, preenforcement." State v. Wallmuller, No. 96313-4, slip op. at 4 (Wash. Sept. 26, 2019), http://www.courts.wa.gov/opinions/pdf/963134.pdf. We review community custody conditions for abuse of discretion. Id.

The due process vagueness doctrine under the Fourteenth Amendment to the United States Constitution and under article I, section 3 of the Washington Constitution requires that citizens have fair warning of proscribed conduct. State v. Bahl, 164 Wn.2d 739, 752, 193 P.3d 678 (2008). A statute is unconstitutionally vague if it (1) does not define the criminal offense with sufficient definiteness or (2) does not provide ascertainable standards of guilt to protect against arbitrary enforcement. Id. at 752-53. Although courts apply the same vagueness doctrine to sentencing conditions, it does not have the same presumption of validity as a statute. Id. at 753. Imposing conditions of community custody is within the discretion of the sentencing court and will only be reversed if manifestly unreasonable. Id. An unconstitutional condition is manifestly unreasonable. Id.

Clark first contends that condition 18 is unconstitutionally vague because it does not adequately define what areas are included within the prohibited locations. In State v. Irwin, 191 Wn. App. 644, 364 P.3d 830 (2015), this court held that a condition prohibiting a defendant from "frequent[ing] places where minors are known to congregate" was vague. Id. at 653. It noted, however, that the condition would be permissible if it included "some clarifying language or an illustrative list of prohibited locations." Id. at 655. Our Supreme Court recently affirmed this holding, concluding that a similar condition, containing a nonexhaustive illustrative list of prohibited areas, was constitutional because it illustrated the scope of the restriction in a way that an ordinary person could understand. See Wallmuller, slip op. at 13 (prohibiting staying in "places where children congregate" when accompanied by a short, nonexclusive list is not vague). Like the condition at issue in Wallmuller, Clark's condition 18 contains a nonexclusive list that clarifies "areas where children's activities regularly occur." By providing such a list, an ordinary person can understand the scope of the prohibited conduct. We thus reject Clark's argument that the terms "area" and "regularly occur" are unconstitutionally vague.

We similarly reject Clark's next argument that condition 18 is vague because it refers to "children" and "youth" without establishing whether the terms are synonymous. But this does not render the condition vague because an ordinary person can understand the scope of the prohibition. The dictionary definition of "child" is "a young person . . . especially between infancy and youth," while the dictionary definition of "youth" is "a young person." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE 388, 2654 (2002). Moreover, condition 18 is under the sub-heading "Offenses Involving Minors." We

- 11 -

thus conclude that the words "children" and "youth" in condition 18 are sufficiently clear for Clark to understand and are not unconstitutionally vague.

We also reject Clark's final argument that condition 18 permits arbitrary enforcement by his CCO. In State v. Bahl, 164 Wn.2d at 758, the Supreme Court held that a community custody condition that prohibited Bahl from possessing pornographic materials "as directed by the supervising Community Corrections Officer" was unconstitutional because it delegated to his CCO the ability to determine what fell within the scope of the prohibition. But by providing the CCO with an illustrative list of prohibited areas, the trial court here limited the CCO's discretion to designate locations to avoid. And the language of the condition makes it clear that the CCO must designate such locations *in advance*, thereby eliminating the risk of Clark inadvertently violating the condition.

We conclude that condition 18 is not unconstitutionally vague because an ordinary person can understand its prohibitions and because it does not permit arbitrary enforcement.

Affirmed.

Andrus, J.

WE CONCUR: