# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 58418-2-II |
| Respondent | |
| v. | UNPUBLISHED OPINION |
| YURI ANATOLY FEITSER, | |
| Appellant | |

CHE, J. — Yuri Anatoly Feitser appeals his conviction for first degree animal cruelty.

While dating, Feitser stayed at Amanda Mugleston's house on most nights. Mugleston had a pet dog named Romeo. In a two-month period, Romeo sustained 21 rib fractures. On the day Romeo died, Mugleston—on her home surveillance system—observed Feitser concealing Romeo from a camera. She could hear multiple thuds and Romeo's screams. When she arrived home, Mugleston found Romeo dead in her bathroom with a stereo on top of him.

Feitser argues (1) the State did not prove that his actions were not "authorized in law," which he claims is an essential element of RCW 16.52.205; (2) RCW 16.52.205 is unconstitutionally vague; and (3) the trial court improperly imposed the $500.00 victim penalty assessment (VPA) and $100.00 DNA collection fee.

No. 58418-2-II

We hold (1) the phrase "except as authorized in law" is not an essential element of RCW 16.52.205, (2) Feitser has not demonstrated beyond a reasonable doubt that RCW 16.52.205 is void for vagueness, and (3) the VPA and DNA collection fee should be stricken.

Accordingly, we affirm Feitser's conviction for first degree animal cruelty but remand for the trial court to strike the VPA and DNA collection fee.

FACTS

In September 2020, Feitser and Mugleston were in a relationship, and Feitser stayed at Mugleston's house on most nights.[1] Mugleston installed surveillance cameras in her house, including one in her master bedroom, one in the dining room, and one at the door to the garage. Feitser was aware of the cameras.

Mugleston's pet, a three-pound Yorkshire Terrier, was named Romeo. In early October 2020, Mugleston noticed that Romeo was "acting strange." Rep. of Proc. (RP) at 203. Mugleston took Romeo to an emergency veterinary clinic, and the veterinarian missed seeing one rib fracture on a chest x-ray. The clinic administered pain medication to Romeo and sent him home.

In early November, Mugleston came home from a day trip with Feitser and noticed Romeo did not want to relieve himself, appeared to lack energy, felt like "bubble wrap," and had urinated blood. RP at 212. Mugleston took Romeo to a veterinary clinic where she discovered that Romeo sustained 11 rib fractures. The clinic sent Romeo home the next day with medication. By mid-November, Romeo seemed to be healing and doing well.

---

[1] Feitser and Mugleston's relationship status fluctuates during this period.

2

No. 58418-2-II

On the morning of November 20, 2020, Mugleston went to work and left Romeo in her bathroom per her routine. Mugleston had arranged a job interview for Feitser that day, so she monitored video footage from the cameras in her house to see if Feitser would make it to the interview. Mugleston narrated videos for the jury that showed Feitser carrying Romeo while concealing Romeo from a camera. From the videos, Mugleston could hear thuds and Romeo's screams, Feitser pleading with Romeo to wake up, and the sound of Mugleston's stereo being ripped from the wall of her bathroom.[2] Mugleston immediately left work and upon arriving home, she discovered Romeo, dead, in her bathroom with a stereo on top of him. Feitser was not at the house.

Dr. Emily Ferrell, a shelter medicine and forensic veterinarian, completed a chest x-ray and a necropsy on Romeo. The results showed 21 rib fractures,[3] air within the chest, and air under the skin. Romeo's broken ribs punctured his lungs. Dr. Ferrell also noted Romeo's femur was out of its pelvic joint. The necropsy revealed Romeo's cause of death was likely blunt force trauma, which resulted in respiratory distress, an inability to breath, and a change in air distribution.

The State charged Feitser with first degree animal cruelty.[4]

---

[2] The jury appears to have also watched a video in which Feitser is seen attempting to perform CPR on Romeo.

[3] Romeo sustained 21 rib fractures over three separate incidents between October and his death on November 20, 2020, nine of which he sustained on November 20.

[4] The State also charged Feitser with intimidating a witness. Feitser does not challenge his conviction for intimidation of a witness.

3

No. 58418-2-II

A jury found Feitser guilty of first degree animal cruelty. The trial court determined Feitser is indigent. The trial court imposed a $500.00 VPA and $100.00 DNA collection fee.

Feitser appeals.

## ANALYSIS

### I. ELEMENTS OF FIRST DEGREE ANIMAL CRUELTY

Feitser argues his conviction must be reversed because the State did not prove that his actions were not "authorized in law," which he claims is an essential element of first degree animal cruelty under RCW 16.52.205. Br. of Appellant at 4. We disagree.

A.    *Legal Principles*

We review issues of statutory interpretation de novo. *State v. Ingram*, 9 Wn. App. 2d 482, 498, 447 P.3d 192 (2019).

When interpreting a statute, our main goal is to determine the legislature's intent and give effect to it. *Id.* First, we look at the plain meaning of the statute. *Id.* To determine the plain meaning of a provision, we look at its text, the context of the statute in which it is found, related provisions, and the whole statutory scheme. *Id.*

The State must prove each element of the charged crime beyond a reasonable doubt. *State v. Crossguns*, 199 Wn.2d 282, 297, 505 P.3d 529 (2022).

B.    *"Except as Authorized in Law" is Not an Element of First Degree Animal Cruelty*

To determine the elements of first degree animal cruelty, we begin by looking at the plain language of the statute. First degree animal cruelty occurs when a person "except as authorized in law . . . intentionally (a) inflicts substantial pain on, (b) causes physical injury to, or (c) kills

4

an animal by a means causing undue suffering or while manifesting an extreme indifference to life," or forces a minor to do so. RCW 16.52.205(1).

Generally, the legislature did not intend for animal cruelty laws[5] to interfere with hunting laws, the right to destroy venomous or otherwise dangerous reptiles, or the right to kill animals for food, among other exceptions. RCW 16.52.180. RCW 16.52.185 and RCW 16.52.205(7) list additional circumstances that are "explicitly not criminalized under" RCW 16.52.205(1). *Nw. Animal Rts. Network v. State*, 158 Wn. App. 237, 239, 242 P.3d 891 (2010).

RCW 16.52.185 lists exceptions to the animal cruelty laws, including the commercial raising and slaughter of livestock, the use of animals in the normal course of rodeo events, and the exhibition of animals in normal events at fairs, among other exceptions. RCW 16.52.205(7) provides, "Nothing in this section prohibits accepted animal husbandry practices or prohibits a licensed veterinarian or certified veterinary technician from performing procedures on an animal that are accepted veterinary medical practices."

Under the plain language of RCW 16.52.205(1), the phrase "except as authorized in law" refers to the activities authorized by RCW 16.52.180, .185, .205(7), or other laws, and explains that such activities are excluded from the scope of RCW 16.52.205(1). Thus, we hold that the phrase "except as authorized in law" is not an essential element of first degree animal cruelty.[6]

---

[5] Chapter 16.52 RCW, the Prevention of Cruelty to Animals legislation, criminalizes conduct that constitutes animal cruelty.

[6] Feitser also claims "the State did not offer any evidence that [his] act was unlawful." Br. of Appellant at 3. To the extent that Feitser makes a sufficiency of the evidence claim, it fails because the claim rests on the false premise that "except as authorized in law" is an essential element of RCW 16.52.205(1).

## II. CONSTITUTIONAL CHALLENGE

Feitser argues RCW 16.52.205 is unconstitutionally vague.  We disagree.

A.      *Legal Principles*

We review challenges to the constitutionality of a statute de novo.  *State v. Ross*, 28 Wn. App. 2d 644, 646, 537 P.3d 1114 (2023), *review denied*, 2 Wn.3d 1026 (2024).

We presume that a statute is constitutional, and the challenging party bears the burden of proving its unconstitutionality beyond a reasonable doubt.  *Id.*

When reviewing a vagueness challenge to a statute, we must determine whether the challenged statute implicates First Amendment rights.  *State v. Richards*, 28 Wn. App. 2d 730, 742, 537 P.3d 1118 (2023), *review denied*, 2 Wn.3d 1027 (2024).  If the challenge does not involve First Amendment rights, we review the statute as applied to the specific facts of the case. *Id.*  When reviewing an as-applied challenge to a statute's constitutionality, we examine the statute in the specific context of the case.  *Ross*, 28 Wn. App. 2d at 646.  A decision that a statute is unconstitutional as applied to the challenging party bars the future application of the statute in a similar context, but it does not completely invalidate the statute.  *Id.*

> Under the due process clause of the Fourteenth Amendment, a statute is void for vagueness if either: (1) the statute does not define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is proscribed; or (2) the statute does not provide ascertainable standards of guilt to protect against arbitrary enforcement.

*State v. Halstien*, 122 Wn.2d 109, 117-18, 857 P.2d 270 (1993) (internal quotation marks omitted) (quoting *Spokane v. Douglass*, 115 Wn.2d 171, 178, 795 P.2d 693 (1990)).

A statute fails the first prong of the vagueness test if it prohibits conduct with terms that are so vague that ordinary people "must guess at its meaning and differ as to its application."

*Richards*, 28 Wn. App. 2d at 743 (internal quotation marks omitted) (quoting *Douglass,* 115 Wn.2d at 179). "If [ordinary people] can understand what the [statute] proscribes, notwithstanding some possible areas of disagreement, the [statute] is sufficiently definite." *Douglass,* 115 Wn.2d at 179.

A statute fails the second prong of the vagueness test if it prohibits conduct using "inherently subjective terms" such that the statute "invites an inordinate amount of police discretion." *See Richards*, 28 Wn. App. 2d at 743 (internal quotation marks omitted) (quoting *Douglass,* 115 Wn.2d at 181). A statute that allows for subjective evaluations by law enforcement is not necessarily vague. *State v. Fraser*, 199 Wn.2d 465, 486, 509 P.3d 282 (2022). The focus of our inquiry is whether the statute invites an inordinate amount of police discretion. *See Id.*

B.      *Feitser Has Not Demonstrated Beyond a Reasonable Doubt that RCW 16.52.205 is Void for Vagueness*

Feitser contends that RCW 16.52.205 invites unfettered discretion from prosecutors in deciding arbitrarily what conduct to prosecute, which renders the statute unconstitutionally vague. In doing so, Feitser appears to challenge only the second prong of the vagueness test.[7] We disagree that RCW 16.52.205 is unconstitutionally vague as applied to Feitser.

RCW 16.52.205 does not involve freedoms protected by the First Amendment. *State v. Andree*, 90 Wn. App. 917, 920, 954 P.2d 346 (1998). Therefore, Feitser's vagueness challenge must be evaluated as an as-applied challenge.

---

[7] Because Feitser does not appear to challenge the first prong of the vagueness test, we decline to address it. *See State v. Hand*, 199 Wn. App. 887, 901, 401 P.3d 367 (2017), *aff'd*, 192 Wn.2d 289 (2018) (We do not make arguments for the parties).

Next, we must determine whether RCW 16.52.205 fails the second prong of the vagueness test such that it is void as applied to Feitser. Feitser contends that the statute does not provide "objective criteria" to distinguish Feitser's acts from acts that are generally not prosecuted but nonetheless satisfy the elements of the statute such as fishing, trapping a mouse, or swatting a fly. *See* Br. of Appellant at 9. A statute fails the second prong of the vagueness test if it proscribes conduct using inherently subjective terms such that the statute invites excessive police discretion. But as the State points out, Feitser does not argue that the terms of RCW 16.52.205 are inherently subjective. And we do not make arguments for the parties. *State v. Hand*, 199 Wn. App. 887, 901, 401 P.3d 367 (2017), *aff'd*, 192 Wn.2d 289 (2018).

To the extent that Feitser is arguing that the statute is unconstitutionally vague because it does not provide ascertainable standards of guilt and thus requires prosecutors to subjectively assess what conduct is prosecuted versus not prosecuted, we disagree. A statute is not necessarily vague just because it allows for subjective evaluations from law enforcement. The focus of our inquiry is whether the statute invites an inordinate amount of police discretion. *See Fraser*, 199 Wn.2d at 486.

Feitser appears to argue that because prosecutors *could* charge a person who, for example, swats a fly, with first degree animal cruelty, the statute is vague as to his conduct of killing a pet dog by fracturing the dog's ribs in 21 places, puncturing the dog's lungs, and causing the dog's femur to be displaced from its pelvic joint. Feitser fails to show how his conduct is subject to an inordinate amount of police discretion when the State may charge only those acts that are made with intent to inflict substantial pain on, cause physical injury to, or kill an animal by a means causing undue suffering or while manifesting an extreme indifference to

8

the animal's life. RCW 16.52.205(1). Feitser has not demonstrated that the statute poses a danger of arbitrary enforcement as it applies to Feitser's conduct. Thus, Feitser's vagueness challenge merits no further consideration. We hold that Feitser has not demonstrated beyond a reasonable doubt that RCW 16.52.205 is void for vagueness as applied to his conduct.

### III. LEGAL FINANCIAL OBLIGATIONS

Feitser argues the trial court improperly imposed the $500.00 VPA and $100.00 DNA collection fee. The State agrees that the VPA should be stricken, but does not address whether the DNA collection fee should be stricken. We accept the State's concession as to the VPA, agree with Feitser that the DNA collection fee should also be stricken, and remand to strike these legal financial obligations.

Under amended RCW 7.68.035(4), the trial court cannot impose the VPA if it finds that the defendant is indigent at the time of sentencing. This amendment applies to cases that are on direct appeal. *State v. Ellis*, 27 Wn. App. 2d 1, 16, 530 P.3d 1048 (2023). Because the trial court found Feitser indigent at sentencing and Feitser's case is on direct appeal, we remand for the trial court to strike the VPA.

Under former RCW 43.43.7541(1), the trial court must impose a DNA collection fee unless the state has already collected the offender's DNA as the result of a prior conviction. But the legislature has eliminated this provision. LAWS OF 2023, ch. 449, § 4; *see also Ellis*, 27 Wn. App. 2d 1 at 17 (determining that the DNA collection fee is no longer mandatory). Thus, we remand for the trial court to strike the DNA collection fee.

9

No. 58418-2-II

CONCLUSION

Accordingly, we affirm Feitser's conviction for first degree animal cruelty but remand for the trial court to strike the VPA and DNA collection fee.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Che, J.

We concur:

_____
Maxa, J.

_____
Veljacic, A.C.J.

10